[Civ. No. 18308.   Second Dist., Div. One.   Dec. 18, 1951.]

HARRISON W. WELLMAN, JR., Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES etc., et al., Respondents.

256

Houser & Houser and J. Everett Houser for Appellant.

Church, Church & Howard and Charles H. Church for Respondents.

WHITE, P. J.—Demurrers, general and special, to plaintiff's amended complaint were sustained with leave to amend. Plaintiff having failed to amend within the time allowed, the action was dismissed pursuant to the provisions of section 581 of the Code of Civil Procedure. From the judgment of dismissal plaintiff prosecutes the present appeal.

In general, the facts are that Harrison W. Wellman, father of plaintiff, died intestate on February 13, 1947, and the defendant Security-First National Bank, hereinafter referred to as the bank, was appointed administrator of the estate. At the time of the death of decedent, certain personal property was held in a safe deposit box at a branch of defendant bank. The decedent also left surviving him his widow, Elsie P. Wellman. On January 5, 1948, the conflicting claims of Elsie P. Wellman and plaintiff to the estate of decedent were settled by written agreement, whereby plaintiff received $5,000 in cash and a ranch in Colorado, and Elsie P. Well-

man received the residue of the estate. The agreement was presented to and approved by the superior court, sitting in probate, on August 6, 1948. On April 26, 1949, the final account of the bank as administrator of the estate was approved and distribution ordered pursuant to the terms of the agreement. On May 2, 1949, Elsie P. Wellman died, her will was admitted to probate, and letters testamentary issued to defendant bank. On April 24, 1950, plaintiff instituted the present action, seeking to quiet title to the personal property that had been in the joint safety deposit box, to have the agreement of January 5, 1948, declared void on the ground of fraud, to have the bank and other defendants declared trustees of the property of the estate received by them, and seeking other relief.

The amended complaint contains three causes of action. In the first cause of action it is alleged that on February 13, 1947, and for a long time prior thereto, and at all times since, and now, plaintiff was and is the owner of and entitled to possession of property consisting of $4,220 in currency and cashier's checks on a branch of defendant bank in the total amount of $38,500; that this personal property "was deposited and held in a safe deposit box" at a branch of defendant bank "in joint tenancy between plaintiff and his father," and "upon the death of the latter, plaintiff became entitled to the same as his sole and exclusive property." It is then alleged: "That plaintiff is informed and believes, and on that ground alleges, that within three years last past, and on or about May 1, 1947, disregarding plaintiff's rights, defendant Security-First National Bank of Los Angeles, as Administrator of the Estate of Harrison W. Wellman, deceased, took possession of said property and thereafter transferred possession of the same to itself as Executor of the Last Will and Testament of Elsie P. Wellman, deceased, and at all times since has been, and is still in possession of the same as such." It is then alleged that the claims of defendants are without right.

In his second cause of action plaintiff alleged that the decedent, Harrison W. Wellman, was married in 1896 to Eda Wellman, and that plaintiff was the only child of this union; that his father and mother were divorced in 1922 and in 1931 decedent married the defendant Elsie P. Wellman; that no children were born of this second marriage; that at the time of the second marriage decedent owned property

worth $250,000 and defendant Elsie P. Wellman owned real property worth $15,000. That on August 16, 1941, decedent and Elsie P. Wellman agreed in writing that the wife would always have a home and an income of $300 per month and that except for a certain home and income property all other property was the separate property of the party in whose name it was placed. A copy of the agreement was annexed to and made a part of the amended complaint.[1] It was further alleged that although Harrison W. Wellman had contracted to make certain testamentary provisions, no will was found

[1]Pertinent portions of the agreement are as follows:

"The parties are husband and wife and are possessed of separate property as well as community property. Since they have been residents of California and also of Colorado since their marriage and their present assets have been acquired at various times, partly with the proceeds of separate property and partly with the proceeds of community property, it would be difficult to determine the proportions and identity of the separate property and the community property of the parties.

"To avoid any difficulty, dispute, or uncertainty regarding their property, the parties are this day mutually dividing all assets standing in either or both of their names so that all their assets hereafter will be the separate property of one or the other as specified herein.

"The apartment house property numbered 1106 Harvard Boulevard, Los Angeles, California is and shall be the separate property of the wife and the husband in equal shares as tenants in common; but the husband hereby agrees that after his death the wife shall have the right to occupy and manage the entire property and shall have the right to retain as her own and separate property so much of the net income from his half of said apartment house as will make her total net income from said property equal the sum of Three Hundred Dollars ($300.00) per month. The husband further agrees to make a provision in his Will which will confirm this right.

"The residence property numbered 1861 Nichols Canyon Road, Hollywood, California, is and shall be the separate property of the wife and husband in equal shares as tenants in common. Each party agrees that after her or his death the other party may occupy said residence for life without payment of rent. Each party further agrees to make a provision in his Will which will confirm this right.

"All other property and assets of either or both parties shall be considered and is hereby made the separate property of the parties respectively according to whatever name it may stand in on the records. If any of the property mentioned in the preceding paragraphs is disposed of, the proceeds thereof shall be considered as governed by this paragraph rather than as retaining the character stipulated as to the original and specifically mentioned real estate.

"Each party agrees that the other party may make any testamentary or inter vivos disposition of his or her separate property and that she or he will not contest, question or attempt to avoid the effect of the provisions of any Will of the other party in regard to the separate property of that party except as may be necessary to enforce the provisions of this agreement as to 1106 Harvard Boulevard and 1861 Nichols Canyon Road.

". . . . . . . . . . . . . ."

upon his death and defendant bank was appointed administrator of his estate.

Upon the death of Harrison W. Wellman, it is averred, it was found that he had already placed about half of his property, real and personal, in the name of plaintiff and that other personal property, consisting of $4,220 in currency and six cashier's checks drawn on defendant bank in favor of plaintiff for a total of $38,500, were in a safe deposit box rented from defendant bank "and held in joint tenancy between Harrison W. Wellman and plaintiff"; that the total value of the estate in California was $82,214.34, and decedent also had real property in Colorado valued at $24,000.

In the foregoing estate proceeding, it is alleged, the administrator was represented by "its officers, agent, and attorneys John Doe, Richard Roe, Harry Roe, and David Roe; that said administrator bank was well informed of the joint tenancy arrangement which had been made . . . as to said safe deposit box, also a separate joint tenancy account between the same parties, and had held conferences with Harrison W. Wellman and taken notes preparatory to drafting a will, but" it is alleged on information and belief, no will was executed; that both the bank and defendant Elsie P. Wellman knew that decedent desired to leave her the house, $300 per month mentioned in the agreement, a car, and nothing else, the rest of the estate to go to plaintiff.

Further, it is alleged, the agents and officers of the bank and Elsie P. Wellman represented to plaintiff that it would be necessary for the bank to take charge of all the property mentioned for the purpose of getting tax clearances; that plaintiff would get back the currency and cashier's checks and one half of the other property; but that it was necessary to liquidate all properties quickly in order to meet administration expenses, taxes and the allowance of $300 per month set up for Elsie P. Wellman; that said representations were false and known by the makers thereof to be false, but were relied on by plaintiff, who surrendered the currency and cashier's checks to the bank. That about February 15, 1947, Harry Roe, as agent and trust officer of the bank introduced plaintiff to Richard Roe, and both of them told plaintiff that Richard Roe was the bank's attorney; that he would advise plaintiff and act as his California attorney; that there was no necessity for plaintiff to have any other attorney; that plaintiff accepted this offer and returned to Colorado "upon

receiving assurances from said defendant that plaintiff's interests would be fully protected."

The complaint continues as follows:

"That in December, 1947, Elsie P. Wellman, acting jointly with Richard Roe, and with the knowledge and consent of defendant bank, and while Richard Roe was representing the said administrator, summoned plaintiff from Colorado to California, whereupon Elsie P. Wellman represented to plaintiff that she was entitled to income in addition to the $300.00 per month set up for her in Exhibit A; that plaintiff was not entitled to one-half of his father's estate, but to considerably less; that a parcel of real property on Normandie near Fourth Street in Los Angeles, of the value of $5,000.00, which decedent had granted to plaintiff by outright deed, would have to be turned back to the estate; that Elsie P. Wellman had consulted with Richard Roe, who was her attorney, and that she had his support; that she and Richard Roe had a plan for settlement of the estate and that unless plaintiff agreed to such plan and permitted the estate to be closed in accordance wtih said plan, she would make demand for the increased allowance per month, and would see that plaintiff got considerably less than one-fourth out of the estate, if he got anything.

"That plaintiff has had no legal training and at said time had received no independent legal advice; that he knew John Doe and Richard Roe were skilled in the law and in charge of defendant bank's legal affairs; that he had trust and confidence in Richard Roe and relied on the latter's assurances heretofore mentioned that he would be plaintiff's California attorney and protect his interest, and when Elsie P. Wellman suggested a conference with Richard Roe, plaintiff readily agreed.

"That in December, 1947, or January, 1948, the conference was held with Elsie P. Wellman, Richard Roe and plaintiff present when Elsie P. Wellman made the following representations, originating either from her or Richard Roe but all concurred in and approved by Richard Roe as agent and attorney for defendant bank, and also as legal advisor and attorney for plaintiff;

"(1) That the currency and cashier's checks in plaintiff's name, taken from the joint tenancy safe deposit box heretofore described and totalling $42,720, and turned over to defendant bank for 'tax clearances' were irrevocably and irretrievably

a part of the assets of the estate and did not belong to plaintiff.

"(2) That the said lot on Normandie, worth $5,000, and standing in plaintiff's name, was actually a part of the assets of the estate; that the apparent transfer to plaintiff was not legal or valid; that plaintiff would have to turn said lot over to the administrator and that if he did not do so he could and would be forced to do so by legal means.

"(3) That the provisions of 'Exhibit A' establishing the separate character of property standing in the name of decedent and granting him the right to make inter vivos disposition of the same did not apply to transfers made by decedent to plaintiff, but that all such were null and void and such property actually belonged to the estate in spite of such transfers.

"(4) That the provisions of 'Exhibit A' granting Elsie P. Wellman an income of $300 per month out of the rents from an apartment property at 1106 Harvard Boulevard, Los Angeles, California, did not actually limit such income to said source but that the $300 per month was a general charge upon the entire estate.

"(5) That the $300 per month last mentioned was not the limit of income to which Elsie P. Wellman was entitled but that the legal effect of 'Exhibit A' was to permit her to also claim additional income to cover sickness; that the additional income would amount to thousands of dollars; that it would be necessary to set aside $85,000 out of the estate to cover the income needs of Elsie P. Wellman; that the same was a proper and necessary obligation from which there was no escape and that such income payments would entirely exhaust the estate in fifteen years.

"(6) That plaintiff's interest in his father's estate was not one-half as he had supposed and as they had previously told him, but was actually one-fourth at best, and that if plaintiff appeared in said estate proceeding and insisted on proving 'Exhibit A' and presented an adversary proceeding to determine his interest in the estate, *they* would assert all possible claims in behalf of Elsie P. Wellman, including those heretofore mentioned and some not specified so that plaintiff would finally receive little or nothing from the estate.

"(7) That they had a plan for compromise under which plaintiff would receive the ranch in Colorado valued at $24,000 and $5,000, additional, and Elsie P. Wellman would receive everything else in the estate as augmented by the

joint tenancy property and the lot on Normandie heretofore mentioned; that the amount offered plaintiff was in excess of that to which he was entitled under the law; that it was offered only on condition that he refrain from appearing in the estate matter to contest the claims of Elsie P. Wellman or to seek a determination of his rights by adversary proceedings, but would return to Colorado forthwith, leaving the California estate to be settled in accordance with their plan and without opposition.

"(8) That they had considered plaintiff's interests carefully and that their plan did not take advantage of him in any way, but in fact, worked to his financial advantage and that he could safely rely on the representations made and put full confidence in them without further investigation; that no investigation or consultation with others was needed in order to protect plaintiff's interests."

The foregoing representations, plaintiff charged, were false and known to be false by the makers, but were believed by plaintiff, who, in reliance thereon, consented to the proposed plan and entered into a written agreement, a copy thereof being attached to the complaint as "Exhibit B," whereby he agreed to the proposed plan. The agreement recited the existence of a "controversy" with respect to the character and nature of the property of the estate and the rights and extent to which plaintiff and Elsie P. Wellman were entitled to share in the estate, and their desire to "settle and compromise all rights, differences and controversies."

It was further alleged that in truth the currency and cashier's checks belonged to plaintiff as surviving joint tenant; that the Normandie lot was his sole property; that Exhibit A limited the widow's income to $300 from a certain source and was not a charge on the entire estate, and did not authorize additional income for sickness; that plaintiff was entitled to one half the estate; that the amount offered in compromise was but a fraction of that to which he was entitled; that no consideration was given to his interests and there was no financial advantage to him in the plan; that the purpose of said representations was to deceive plaintiff and "keep plaintiff out of court, or to receive independent advice thereon, or to file an adversary proceeding to enforce distribution to him of his just share of said estate"; that in the absence of such representations plaintiff would not have agreed to the plan or allowed the same to be approved by the probate court or refrained from seeking independent legal advice

or failed to file objections to the decree of distribution in his father's estate.

It further appears from the amended complaint that the bank's attorneys prepared a will for Elsie P. Wellman excluding plaintiff from any share in her estate, and upon her death on May 2, 1949, and prior to distribution in the father's estate, Elsie P. Wellman died and defendant bank was appointed her executor. The compromise agreement between plaintiff and Elsie P. Wellman was presented to and approved by the probate court on August 6, 1948, without notice to or knowledge of plaintiff. The final account in his father's estate was settled and distribution ordered, pursuant to the terms of the compromise agreement, on April 26, 1949.

The theory of this second cause of action, as indicated from the foregoing and from other allegations of the amended complaint, is that plaintiff, by fraudulent representations "has been prevented from appearing in or presenting an adversary proceeding in the probate court upon the merits and that, in fact, there has been no adversary trial or decision of the issues involving plaintiff's rights herein."

In the third cause of action it was charged that about June, 1949, defendant bank, as executor of the estate of Elsie P. Wellman, deceased, wrongfully obtained from plaintiff currency in the amount of $4,220 and cashier's checks drawn on defendant bank in favor of plaintiff for $38,500, which checks were cashed by defendant bank and the currency and proceeds of the checks transferred to it as executor; that the remaining defendants assert a claim to said sum or some part thereof and are joined so that their rights, if any, can be adjudicated.

The general and special demurrers filed by the bank, Grace P. Calhoun and Yeates Parsons (the latter two individuals being beneficiaries under the will of Elsie P. Wellman) were sustained without specification in the order as to what grounds of demurrer were found to be meritorious.

It is true, as respondent contends, that plaintiff having pleaded the specific and detailed facts of his case in his second cause of action, and it clearly appearing that the first and third causes of action were based on the same facts as those set forth in the second cause, the first and third causes of action consisting as they do of legal conclusions derived from the specific facts of the second cause of action, cannot prevail against a demurrer if the second cause fails to state facts sufficient to constitute a cause of action. (*Shive* v.

*Barrow,* 88 Cal.App.2d 838 [199 P.2d 693] ; *Harris* v. *Kessler,* 124 Cal.App. 299 [12 P.2d 467] ; *Powers* v. *Freeland,* 114 Cal.App. 146 [299 P. 736] ; *Hays* v. *Temple,* 23 Cal.App.2d 690 [73 P.2d 1248] ; *Rose* v. *Ames,* 53 Cal.App.2d 583 [128 P.2d 65].) The decision of this appeal, therefore, turns upon the sufficiency of the facts set forth in the second cause of action.

The position of respondents is that the second cause of action shows only that plaintiff and Elsie P. Wellman entered into an agreement to settle their conflicting claims to the estate; that the decree of the probate court approving the agreement and the decree of final distribution in the estate of Harrison W. Wellman are res judicata; that alleged fraud in the procurement of the agreement, which was presented to and approved by the probate court, and upon which the decree of distribution was made, does not constitute extrinsic fraud giving rise to a cause of action in equity to avoid the effect of such decree. The probate court, it is urged, not only had jurisdiction to inquire into the validity of the agreement so far as it embraced property claimed not to be part of the estate and property concededly a part of the estate, but it had the duty to inquire into the fairness of the agreement (*Carr* v. *Bank of America,* 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282]; *Estate of Stanley,* 34 Cal.2d 311 [209 P.2d 941] ; *Bennett* v. *Forrest,* 24 Cal.2d 485 [150 P.2d 416] ; *Estate of Cazaurang,* 75 Cal.App.2d 217 [170 P.2d 694].) Thus the problem presented turns upon whether respondents are correct in their contention that the facts show no more than a compromise of differences and that appellant was not prevented, by fraud extrinsic to the matters in controversy, from presenting his claims in court. For the classic definition of "extrinsic fraud," reference is made to *United States* v. *Throckmorton,* 98 U.S. 61, 65 [25 L.Ed. 93].

A case much similar to the one at bar is *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728], where equitable relief was denied a wife who sought to set aside provisions of a divorce decree involving a property settlement agreement induced by alleged false representations of the husband as to whether certain property was separate or community. Concededly, the cases are alike in that conflicting claims were settled by an agreement presented to and approved by the court. We perceive a distinction between the facts of the two cases, however, and for the purpose of pointing out this distinction, as well as stating the considerations applicable to cases of this

character, we quote from the opinion in the Jorgensen case prepared by Mr. Justice Traynor, as follows (pp. 18, 19):

■ ". . . The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment, even though a party has persuaded the court or the jury by false allegations supported by perjured testimony. ■ This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case. ■ Thus, equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case. . . . The terms 'intrinsic' and 'extrinsic' fraud or mistake are generally accepted as appropriate to describe the two different categories of cases to which these policies of the law apply. . . . ■ They do not constitute, however, a simple and infallible formula to determine whether in a given case the facts surrounding the fraud or mistake warrant equitable relief from a judgment. . . . It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case."

The court in the cited case proceeded to hold that since the husband had fully disclosed his assets, and her attorney did not intentionally fail to protect her interests, she was barred from equitable relief by her admission that she did not investigate the facts, but chose to rely on the husband's representation as to what part of the disclosed property was community property. A similar ruling would be indicated in the present case, where there was no concealment of the assets of the estate, and the agreement entered into settled the conflicting claims of the widow and the son.

■ But in the present cause, we find in the amended complaint allegations that a trust officer of the defendant bank and an attorney for the bank advised plaintiff that he should consult with the bank's attorney, and that this attorney "would advise plaintiff and act as his California attorney" and that

his interests "would be fully protected." Further, that the representations inducing execution of the agreement, as hereinabove quoted, were "concurred in and approved" by the attorney as agent and attorney for the bank, and also as legal advisor and attorney for plaintiff. These charges, however difficult of proof they may be thought to be, bring the case within the rule applicable where a party has been deprived of a fair opportunity fully to present his case. ▌ As was said in *Jorgensen* v. *Jorgensen, supra,* pages 19 and 20: "The latter policy" (permitting relief) "applies when a party's adversary, in violation of a duty arising from a trust or confidential relation, has concealed from him facts essential to the protection of his rights, even though such facts concerned issues involved in the case in which the judgment was entered. 'The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud, for which equity may relieve from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony, and this is true whether such fraud be regarded as extrinsic or as an exception to the extrinsic fraud rule.' (3 Freeman, Judgments, 5th ed., p. 2576; see *Laun* v. *Kipp,* 155 Wis. 347 [145 N.W. 183, 5 A.L.R. 655].) ▌ In this state equitable relief has been granted from final judgment settling the accounts of guardians, administrators, or executors who withheld information that would have enabled the beneficiaries to attack the accounts. . . . The same principle applies to decrees distributing the estate of a decedent adversely to the rights of beneficiaries who have been precluded from pursuing their rights by concealment of facts by the fiduciary . . . and to other probate decrees obtained under similar circumstances. . . ."

▌ It is true, in the present case, there was no concealment of *facts,* strictly speaking, the amount and character of the property being fully disclosed and known to both parties. But the facts alleged in the second cause of action sufficiently charge that plaintiff was prevented from presenting his case by reason of deception by persons under a fiduciary duty toward him, within the meaning of the language in *United States* v. *Throckmorton, supra,* 98 U.S. 65, where the court said: "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced upon him by his opponent, . . . or where an attorney fraudulently or without authority assumes to represent a party and con-

nives at his defeat; or where the attorney regularly employed corruptly sells out his client's interests to the other side,— these, and similar cases which show that there never has been a real contest at the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside the former judgment or decree and open the case for a new and fair hearing."

See, also, *Duffy* v. *Duffy*, 82 Cal.App.2d 203, 207 [186 P.2d 61]; *Larrabee* v. *Tracy*, 39 Cal.App.2d 593, 598, 599, 600 [103 P.2d 61].

The facts, taking them as alleged, clearly present a case of a breach of a fiduciary duty whereby the plaintiff was prevented from "fully exhibiting his case" within the meaning of the language in the case last cited, and an overreaching on the part of persons in a fiduciary position which resulted in the plaintiff, the son of the decedent, entering into an improvident agreement upon what he believed to be sound legal advice given in his interest. The terms of the agreement between Elsie P. Wellman and decedent, as well as the alleged facts concerning the personal property in the joint safe deposit box and the real property allegedly granted to plaintiff, would appear to justify a conclusion, although we do not expressly so hold, that the alleged representations were false and that plaintiff was entitled to a substantial share of his father's estate, or at least to the property in the safe deposit box, which latter property the bank allegedly appropriated under the claim that it was required to do so for "inheritance tax" purposes.

We have given consideration to the several cases cited by respondents. However, they set forth and apply the rules already adverted to in this opinion as applicable to varying factual situations. None of the cited cases is identical with the one now under consideration and none is controlling. At most, they serve to illustrate that the rule of "extrinsic" and "intrinsic" fraud must be applied to a variety of factual situations. That the rule does not constitute "a simple and infallible formula" was pointed out by Mr. Justice Traynor in *Jorgensen* v. *Jorgensen, supra,* page 19, wherein he further pointed out the necessity of examining the facts "in the light of . . . the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case."

The facts hereinbefore set forth are a sufficient answer to the argument that laches appears on the face of the com-

plaint. If any of the parties defendant have been prejudiced or damaged by plaintiff's delay in prosecuting his suit for relief, such prejudice or damage may be shown upon a trial of the cause. We hold that laches does not appear on the face of the amended complaint. (*Varrois* v. *Gommet*, 43 Cal. App. 756 [185 P. 1001].)

Plaintiff's first cause of action, standing by itself, is not vulnerable to the contention that it is barred by the statute of limitations (Code Civ. Proc., § 338), since it is charged that "within three years last past" defendant bank took possession of personal property of the plaintiff. This allegation is not impeached or controverted by the allegations of the second cause of action, which set forth the alleged circumstances under which defendant bank took possession of the personal property in the safe deposit box for "inheritance tax purposes" and asserted no claim thereto as administrator until within the three-year period within which the action herein was commenced. Until an adverse claim was asserted, plaintiff's cause of action did not arise.

By the third cause of action defendant bank is charged, as executor of the will of Elsie P. Wellman, with having received the joint deposit moneys and checks on or about June, 1949, for the use of plaintiff, and that the "other defendants" are also asserting a claim to the moneys or some part thereof and are joined so that their rights can be adjudicated. In other words, the bank is here sought to be held as having received moneys of plaintiff, in its capacity as executor of the will of Elsie P. Wellman, following her demise, and on or about June, 1949, said moneys being the same moneys and funds which the bank had previously acquired and held as administrator of the Estate of Harrison W. Wellman, Deceased. If the allegations of the first and second causes of action are taken as true, then the possession of the bank was wrongful as against the plaintiff from at least May 1, 1947, when, according to the first cause of action, the bank took possession as administrator of the Estate of Harrison W. Wellman, Deceased. It follows, in accordance with the rule hereinbefore mentioned, that the third cause of action must fail, as being barred by the two-year statute of limitations (Code Civ. Proc., § 339, subd. 1.) The demurrers were properly sustained as to the third cause of action.

The various grounds of special demurrer advanced by respondents have been considered and found unmeritorious. The

facts upon which plaintiff seeks to recover have been adequately set forth in his first and second causes of action.

The judgment is reversed, with directions to overrule the demurrers, general and special, so far as they apply to the first and second causes of action of the amended complaint, to allow the demurring defendants a reasonable time to answer, if they be so advised. Appellant to recover costs on appeal.

Doran, J., and Drapeau, J., concurred.