[Civ. No. 18346.   Second Dist., Div. Two.   Apr. 2, 1952.]

ELIZABETH ANNE MARTIN, Respondent, v. DEAN
MARTIN, Appellant.

Pacht, Tannenbaum & Ross, Clore Warne and Maxwell E. Greenberg for Appellant.

Jacques Leslie and Marvin B. Meyer for Respondent.

FOX, J.—Plaintiff and defendant were married in 1940. Four children were issue of this marriage. In February, 1949, they agreed to live separate and apart and went to attorney Leslie to prepare an agreement settling their property rights and making provision for the support of plaintiff and their children. Such agreement was executed by the parties on March 24, 1949. It provided, among other things, for the payment of $1,000 a month for the support of the wife. In settlement of their property rights the husband agreed to pay her an additional $1,000 a month plus $60,000, $10,000 of which was paid upon the execution of the agreement and the balance of $50,000 was to be paid at the rate of $1,000 a year. All these installment payments, however, were to terminate upon either the death or remarriage of the wife. He also agreed to pay $1,000 a month for the support of the children until the youngest reached the age of 21. This agreement was amended by another which was executed on July 11th. By this amendment the monthly payments to the wife for her support were increased to $1,435; and the above figure of $60,000 was increased to $65,000 with the provision that $5,000 of that amount was

payable August 24th. On that date plaintiff-wife secured a divorce decree in Nevada, in which decree the property settlement agreement of March 24th, as amended by the agreement dated July 11th, was approved "as to its due execution and the fairness of its terms only." In November defendant consulted counsel regarding his income tax position. As a result of the advice received he served notice on the 26th that he rescinded said agreements. He thereafter refused to pay the amounts specified therein. Plaintiff thereupon brought this action to recover the amounts due thereunder. In his answer to plaintiff's amended complaint defendant interposed the defenses of fraud, mistake, undue influence, no consideration, and that the agreement as amended created and imposed upon him an unconscionable, inequitable and oppressive hardship. In an amended cross-complaint defendant sought rescission and cancellation or, in the alternative, the reformation of said agreement and amendment upon the grounds alleged in his answer. He also included a cause of action for damages for fraud and one for declaratory relief. Demurrers were sustained without leave to amend to the affirmative defenses and to the amended cross-complaint. Motion to strike the answer and for summary judgment was granted. The court awarded plaintiff judgment for $13,765, which represented the payments due under the terms of the amended agreement, and also awarded $8,000 to plaintiff as attorney's fees. Defendant appeals from this judgment.

In his answer and amended cross-complaint defendant alleges that he and plaintiff agreed to enter into a written contract settling their property rights and providing for the support of plaintiff and their children; that such agreement would be fair, reasonable and just to each party; that for the purpose of negotiating and preparing such written agreement plaintiff and defendant consulted attorney Jacques Leslie; that the said attorney promised to prepare such an agreement; that for the purpose of negotiating and formulating said agreement defendant disclosed to plaintiff and Leslie "the amount of the income, assets and liabilities of plaintiff and defendant"; that defendant reposed "trust and confidence" in plaintiff and Leslie and relied on them to prepare "an agreement that would be fair, reasonable and just" to him; that he believed they would not deceive, mislead or take unfair advantage of him; that they knew of the trust and confidence he reposed in them, and knew he

relied upon them to prepare such an agreement. He further alleges that they advised him "not to procure independent counsel and advice in the preparation and negotiation of said agreement"; that they advised him Leslie would procure an attorney in his office "to sign said agreement in the roll of defendant's attorney for purposes of formality"; that relying upon such advice he did not procure independent counsel to represent him in the negotiation and preparation of said agreement and amendment thereto or to explain and interpret for him the terms and effect of said documents; that Leslie procured the services of Attorney George Pickering to sign said documents "in the role of defendant's attorney for purposes of formality." Defendant then alleges that by reason of the trust and confidence reposed in plaintiff and Leslie and his consequent belief that they would not act in a manner to deceive, mislead or take unfair advantage of him, he relied upon them and was thereby induced to sign the agreement of March 24th and the amendment of July 11th.

Defendant alleges he intended and understood that any such agreement would provide for payments to plaintiff of "amounts that would be substantially less than one third of defendant's earnings following payment of income taxes by defendant and plaintiff"; that the provisions of such agreement would permit him to decrease the debts and obligations of the community; that any such agreement would be subject to modification by any court of competent jurisdiction depending upon changes in his financial circumstances; that plaintiff would give to him valuable consideration in return for his undertakings in such agreement; that such agreement would be fair, just and reasonable as to plaintiff and defendant and their children; that plaintiff and Leslie were each apprised of defendant's said intentions and understanding. Defendant further alleges that said agreement as amended had the effect of requiring that he "pay to plaintiff sums that would amount to from approximately 50 per cent to over 100 per cent of defendant's available earnings after paying taxes by plaintiff and defendant"; that plaintiff and Leslie each knew said amended agreement had such effect; that said agreement and amendment were not subject to modification by the court depending on changes in his financial circumstances; that plaintiff and Leslie each knew they were not subject to modification; that in return for defendant's promise to pay certain sums specified in said agree-

ment plaintiff agreed to release all her rights in the community property of the parties; that, however, there was no community property; that as a consequence he received no consideration for his agreement to make said payments; that plaintiff, Leslie and Pickering each knew there was no community property; that plaintiff and each of said attorneys knew said agreement imposed upon defendant an unconscionable, inequitable and oppressive hardship, and at no time did either of said attorneys explain, interpret or analyze for him said agreement and amendment. Defendant also alleges that he did not know said agreement as amended required him to pay sums which would amount to from approximately 50 per cent to more than 100 per cent of his available earnings after payment of taxes by him and plaintiff; that if he had known such was the effect of the said documents he would not have signed them; that plaintiff and Leslie knew he was unaware said amended agreement so provided and they also knew that if he had understood said agreement had such effect he would not have signed it; that plaintiff and the two lawyers not only failed to disclose said agreement as amended had that effect, but each of them represented to him said documents were in accordance with his intentions and understanding.

Similar allegations are made to show that these parties deceived and misled defendant with respect to (1) the right to have the contract modified by a court upon a change of his financial situation, (2) the question of whether or not plaintiff and defendant had community property and therefore whether the payments defendant agreed to make on account thereof were without consideration, (3) whether the provisions of the agreement were so burdensome as to prevent him from decreasing the debts of the community, and (4) the fairness of the agreement as amended.

It is further alleged that in the month of July, 1949, proceedings for divorce were instituted against defendant in the state of Nevada; that no summons or copy of the complaint were served upon defendant; that plaintiff and Leslie, with the intention of preventing defendant from appearing in said divorce proceeding and attacking the validity and fairness of said agreement and the amendment thereto, presented to defendant for his signature a power of attorney prepared by them which authorized certain Nevada attorneys, unknown to defendant, to appear for him in said Nevada divorce proceedings; that plaintiff and Leslie, knowing of the trust and confidence reposed in them by defendant, and with the

intent and purpose of inducing defendant to sign said power of attorney, advised defendant they would protect his interests in said divorce proceeding and that there was no necessity for defendant to appear in or defend said action; that relying upon said representations of plaintiff and Leslie defendant signed said power of attorney and was persuaded by them not to appear in said divorce proceedings. It is further alleged on information and belief that plaintiff and Leslie used said power of attorney to employ an attorney, unknown to defendant, to represent defendant in said divorce action; that they colluded with said attorney so employed by them that said attorney would act for the interests of plaintiff in said proceedings and would not contest the validity and fairness of said agreement or amendment, or advise defendant of the invalidity and unfairness of either of said documents; that said attorney purported to represent defendant but in fact acted for the interests of plaintiff in said divorce proceedings; that defendant was thereby fraudulently led to believe he had no grounds to attack the fairness and validity of said agreement as amended, and that he was fraudulently prevented from appearing in said divorce action and attacking the validity and fairness thereof.

From the foregoing it will be observed that defendant has alleged facts showing a relationship of trust and confidence in the plaintiff and Leslie. Regardless of the difficulty of proving such an issue, we must on demurrer accept it as a fact. ■ "Where there exists a relationship of trust and confidence, it is the duty of one in whom the confidence · is reposed to make full disclosure of all material facts within his knowledge relating to the transaction in question, and any concealment of material facts is a fraud." (*Daily* v. *Superior Court*, 4 Cal.App.2d 127, 131 [40 P.2d 936]; *Estate of Shay*, 196 Cal. 355, 365 [237 P. 1079]; 12 Cal.Jur. 772.) It was therefore incumbent upon plaintiff and Leslie to reveal to defendant the effect of the documents which he signed. ■  This, according to his allegations, they not only failed to do but they affirmatively and falsely represented to him that these documents were in accordance with his intentions and understanding. He clearly alleges they knew these documents did not truly reflect his understanding of the settlement he was making with his wife, yet because of his faith and confidence in her and Leslie they were able to and did induce him to rely on their representations and thus believe the papers were in compliance therewith. It is also

clear from his allegations that the misrepresentations were with respect to important items in the settlement of the support and financial affairs of plaintiff and defendant, and that the resultant agreement and amendment which he was fraudulently induced to sign was greatly to his detriment. These allegations lay a foundation for equitable relief on behalf of defendant. (Civ. Code, § 1572; *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958]; *Seeger* v. *Odell*, 18 Cal.2d 409, 414 [115 P.2d 977]; *Cohen* v. *Metropolitan Life Ins. Co.*, 32 Cal.App.2d 337, 348 [89 P.2d 732].)

■ Plaintiff contends that the misrepresentations charged against her and Leslie by defendant cannot constitute grounds for equitable relief because they were mere speculative opinions on matters upon which defendant was the best able to speculate and the only person in complete possession of all the facts. This position is not sound. The income tax problem in contracts for the support of a wife and children and in settling the property rights between a husband and wife are complex and technical and often a matter of major importance requiring skill and experience in dealing with them. The magnitude of the payments involved in this case would indicate the tax situation was of considerable importance. As a lawyer Leslie has no doubt had wide experience in preparation of support and property settlement agreements, and has found it necessary to familiarize himself. with the effect of income tax laws on the various phases of such agreements. In that respect he was undoubtedly in a position superior to defendant. Under such circumstances his statements take on added significance particularly since defendant alleges a relationship of trust and confidence in him. In this connection it is said in 37 Corpus Juris Secundum 230, that "Where the speaker has superior knowledge or means of knowledge and a relation of confidence exists, such that the speaker knows the hearer relies on his statements as true, the speaker's expression of an opinion intended to deceive constitutes remediable fraud." Actually, the determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made. (*Willson* v. *Municipal Bond Co.*, 7 Cal.2d 144, 150 [59 P.2d 974]; *Laraway* v. *First Nat. Bank of La Verne*, 39 Cal.App.2d 718, 730 [104 P.2d 95]; *White* v. *Financial Guarantee Corp.*, 13 Cal.App.2d 93, 97 [56 P.2d 550].) Moreover, as was said in *Zwart* v. *Landfield*, 93 Cal.App. 328, at 333 [269 P. 740], "the expres-

sion of opinion may amount to fraud where it is accompanied by active misrepresentations or concealment, . . .'' Furthermore, ''The cases also indicate that where there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the facts.'' (*Willson* v. *Municipal Bond Co., supra,* p. 151.) It is thus apparent we cannot say as a matter of law that the alleged representations made to defendant by plaintiff and Leslie could not form the basis for equitable relief on the theory of fraud.

Plaintiff argues defendant cannot rescind their support and property settlement agreement since he is unable to restore her to status quo because she has since secured a final decree of divorce. It is not necessary for us to determine on this appeal the relief to which defendant is entitled. We merely hold that under his pleadings defendant is entitled to have the case heard on its merits. The relief, if any, to which he is entitled will necessarily depend on the evidence and applicable legal and equitable principles. The prayer of defendant's cross-complaint is sufficiently broad to enable the court to grant whatever relief, if any, the facts justify. He seeks not alone a rescission of the agreement and amendment but, in the alternative, a reformation of the contract in line with what he claims he intended and understood its terms would be.

As a basis for defeating defendant's charge that he was induced to sign the agreement and amendment through fraud plaintiff relies on the fact the Nevada court approved the property settlement agreement as amended as to its validity and fairness. It will be recalled, however, that defendant alleges plaintiff and Leslie induced him not to appear in the Nevada divorce case and that, pursuant to a power of attorney which they had persuaded him to sign, they arranged for counsel to appear for him who would act for the interests of plaintiff. According to his allegations, defendant was thus prevented by plaintiff and Leslie from having his day in court to contest the validity and fairness of the agreement. When equitable relief from a final judgment is sought it is important to determine whether the fraud or mistake is intrinsic or extrinsic to the issues involved in the case in which the judgment was entered. The reason for this is stated by the Supreme Court in *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, at page 18 [193 P.2d 728], as follows: ''The public policy underlying the principle of res judicata

that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment, even though a party has persuaded the court or the jury by false allegations supported by perjured testimony. This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case. Thus, equitabe relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case." (Citing cases.)

█ Defendant's pleadings make out a case of extrinsic fraud and bring it squarely within the principle stated in *United States* v. *Throckmorton,* 98 U.S. 61, 65 [25 L.Ed. 93], as follows: "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced upon him by his opponent . . . or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; . . . these, and similar cases which show that there never has been a real contest at the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside the former judgment or decree and open the case for a new and fair hearing." A recent application of this principle is found in *Wellman* v. *Security-First Natl. Bank,* 108 Cal.App.2d 254, 266, 267 [238 P.2d 679].

█ Plaintiff, however, argues that defendant is not entitled to relief because of laches. There is no support for the application of that principle on the record before us. According to his allegations defendant gave notice of rescission immediately upon being advised of the effect of the documents which he had signed and particularly with relation to his income tax situation. Whether or not he should have sought advice on these matters at an earlier date is a question of fact. Certainly laches do not appear as a matter of law from the face of defendant's pleadings.

The judgment is reversed with directions to overrule the demurrer to defendant's affirmative defenses and to his amended cross-complaint.

Moore, P. J., and McComb, J., concurred.