[Civ. No. 65503. Second Dist., Div. One. Oct. 28, 1982.]

In re the Marriage of GERALDINE A. and ALONZO C. ADKINS
GERALDINE A. ADKINS, Appellant, v.
ALONZO C. ADKINS, Respondent.

## Counsel

Griffin, Redmond & Wu, Richard T. Griffin and James P. Stoneman II for Appellant.

Robert F. Johnson and Debra J. Przelomiec for Respondent.

## Opinion

**SPENCER, P. J.—**

### Introduction

Petitioner Geraldine A. Adkins appeals from an order vacating and annulling final and interlocutory judgments of dissolution of marriage, and rescinding

and cancelling a written marital settlement agreement executed on July 22, 1980.

## PROCEDURAL BACKGROUND

On September 3, 1980, petitioner filed for dissolution of the parties' marriage, alleging that all of the assets and obligations of the parties had been disposed of by prior written agreement. However, notwithstanding the foregoing allegation, petitioner listed one parcel of real property as property over which the court had jurisdiction. Petitioner made no request for spousal support.

On September 11, respondent was personally served with the summons and petition. Thereafter, on October 15, 1980, an uncontested hearing was held pursuant to a written stipulation which provided for such a disposition and further provided that petitioner obtain judgment according to the terms of the written marital settlement agreement executed July 22, 1980.

An interlocutory judgment was granted, dissolving the marriage of the parties, and providing in pertinent part: ' 'Husband is ordered to pay the sum of $250.00 . . . spousal support on the 1st day of each month beginning 9-1-80 until further order of the court, death of the parties, or remarriage by Petitioner. [¶] The Court finds that the parties have divided their community property pursuant to the provisions found on the Marital Settlement Agreement dated July 18, 1980, received into evidence as Petitioner exhibit I and approved by this court. [¶] The court confirms to Petitioner as her sole and separate property all real and personal property in her possession or control. [¶] The Court confirms to Respondent as his sole and separate property all real and personal property in his possession or control . . . ." A final judgment was entered on April 28, 1981.

When respondent subsequently was served with an order to show cause re. contempt, he employed counsel for the first time. Thereafter, on June 29, 1981, respondent moved to vacate and annul the interlocutory and final judgments, and to rescind the written marital settlement agreement on the grounds of duress, undue influence and fraud. After a full evidentiary hearing, the trial court entered the order from which the instant appeal is taken.

## STATEMENT OF FACTS

The marriage of the parties appeared to be in difficulty for some time prior to the separation of the parties. During an argument shortly before separation, petitioner told respondent that she could get a lawyer, remove him from the family home, "take everything," and he would end up paying the rest of his life if he failed to accede to her wishes. Respondent had a minimal education, was

totally lacking in sophistication, knew nothing of his legal rights under California law and, hence, believed petitioner could make good her threats.

Some time in July 1980, respondent was contacted by petitioner's attorney, Franchshessa B. Bixler, at which time Attorney Bixler made an appointment for respondent to come to her office. Respondent was not then represented by counsel and he did not contact an attorney prior to keeping the appointment. When respondent arrived at the office in the company of petitioner, Attorney Bixler showed him some papers and stated that his wife was going to file for dissolution of the marriage. Attorney Bixler then told respondent that he and his wife must divide their property and that he would have to pay some alimony to his wife. Respondent asked whether he needed a lawyer, to which Attorney Bixler replied that hiring a lawyer would only cost him more money, in addition to which he would have to pay for his wife's attorney; it would be much easier if he allowed her to handle the case.

On a subsequent visit to Attorney Bixler's office, a secretary handed respondent papers which later proved to be the marital settlement agreement. Attorney Bixler informed him that the papers would give to petitioner the family residence in Los Angeles and a second house in Eagle Rock; no mention was made of furniture. Attorney Bixler further stated that petitioner would receive her 1975 Mercury automobile and her pension benefits with her employer of 15 years. Respondent inquired about a savings account in the amount of $10,000; he was told that he and his wife each would receive one-half, but from his one-half, respondent would have to pay his wife's lawyer's fees and all unpaid bills.

When respondent asked what he would receive, Attorney Bixler stated he would receive the 1971 Cougar automobile, 1966 Ford pickup truck, and his newly-created business. However, Attorney Bixler stated, respondent would have to pay some spousal support because his wife needed it. Respondent explained that petitioner had been employed at Products Research Company for more than 15 years and that she made more money than he, but Attorney Bixler reiterated that petitioner was entitled to the money because she needed it. When respondent further pointed out that all of their children were adults and he and his wife were able to support themselves, Attorney Bixler insisted that petitioner needed $250 per month and the court would give it to her.

Respondent was raised in an isolated rural background and received only a third grade education. He has worked since age 10; he is a steel-burner by occupation, practitioner of a semi-skilled trade. Respondent does not know how to make out a check, and although he has signed checks and contracts, his wife has always taken care of such matters; he relied on her understanding. Although he can read, respondent does so with difficulty and very slowly. Respondent exhibited confusion over the meaning of common words such as "multiply."

Attorney Bixler refused to allow respondent the time to read and understand the papers; she neither read them to him, explained the meaning of the words employed, nor explained any terms of the agreement other than those relating to property division and spousal support. Attorney Bixler never discussed with respondent the value of his newly formed business and requested no records thereof. When he specifically asked why he had to sign the papers, Attorney Bixler said, "Don't worry; we will handle everything and if you will just sign these papers, you won't have to go to court . . . . If you won't sign the papers, then you will have to go to court and it will cost you even more." Indeed, Attorney Bixler urged that respondent sign, stating, "It would be better this way than if there is a big fight."

Attorney Bixler never explained to respondent his community property rights. Having no knowledge of his entitlement and no experience with lawsuits of this nature, respondent believed Attorney Bixler's statement that matters would be worse if he did not sign the papers. As a result, respondent executed the documents according to Attorney Bixler's directions. Only later did respondent learn that one of those documents was a stipulation to allow the dissolution to proceed by default and allow petitioner to receive a judgment based on approval of the property division agreement.

On approximately June 17, 1981, respondent was served with legal documents relating to contempt proceedings for failure to pay spousal support. Respondent had understood from Attorney Bixler that he was required to pay support only "if your wife needs it," but the contempt papers indicated he could go to jail for nonpayment. As a result, respondent went to Attorney Bixler's office to obtain, for the first time, copies of the documents he had signed. Thereafter, he sought legal advice and learned of his entitlement to one-half of the parties' community property. In addition, he learned that petitioner was not entitled to spousal support if she was self-supporting. Had he known his rights at the time of his meetings with Attorney Bixler, respondent would not have relinquished his rights to the property the parties had acquired during 30 years of hard work—particularly since, at the time, he was earning less than $500 per month, his newly formed business was not a going concern from which he made money, and the investment in the business consisted solely of his workman's tools.

## CONTENTIONS

### I

Petitioner contends that there is insufficient evidence to support the trial court's conclusion that respondent was deprived of a fair hearing on the merits due to extrinsic fraud.

 ■

## II

Petitioner further contends that the trial court lacked jurisdiction to rescind the marital settlement agreement.

## III

Finally, petitioner asserts that the trial court abused its discretion in vacating that portion of the judgment which dissolved the marriage of the parties.

### DISCUSSION

### I

 There is no merit to petitioner's contention that the evidence is insufficient to support the trial court's conclusion that respondent was deprived of a fair hearing on the merits due to extrinsic fraud. In assessing the sufficiency of evidence on appeal, we must view the evidence in the light most favorable to the trial court's determination, drawing all reasonable inferences and disregarding all contradictory evidence. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].) Moreover, the testimony of one witness, even a party to the proceeding, may be sufficient. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) In point of fact, petitioner prevails upon us to reweigh the evidence; this we may not do.

 It is elementary that a final judgment may be set aside upon a showing that extrinsic factors have prevented one party from presenting his or her case in court. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882].) It is not necessary, however, that the fraud or deception of the opposition prevent a party from appearing in court; the principle extends to deception which prevents knowledge of one's rights. (*Granzella* v. *Jargoyhen* (1974) 43 Cal.App.3d 551, 555 [117 Cal.Rptr. 710, 84 A.L.R.3d 1113].)

 The evidence presented by respondent disclosed a man devoid of sophistication and with only limited education. He lacked a clear understanding of much common vocabulary and fairly simple concepts ordinarily encountered in everyday life; he was unable to perform arithmetical functions beyond simple addition and subtraction; he did not know how to make out a check; he relied heavily on his wife to manage family finances and handle family business transactions.

Respondent had no knowledge or understanding of community property rights. Shortly before his separation from petitioner, she told respondent she

could remove him from the house, take everything he had, and force him to pay her support for the rest of her life. Respondent's meeting with Attorney Bixler followed petitioner's threat. Attorney Bixler failed to apprise respondent of his property rights and made no effort to explain fully the contents of the various documents on which she sought respondent's signature. In addition, Attorney Bixler insisted respondent had to pay petitioner spousal support regardless of their respective financial positions and discouraged him from seeking legal advice, stating such a course would only cost respondent more and result in a court appearance which would leave respondent in a worse position than if he were to sign the documents.

In short, Attorney Bixler did nothing to dispel petitioner's threat to respondent and led him to believe he was better served by signing the documents she had prepared than by appearing in court. Without understanding the precise nature of the documents before him, respondent relied on Attorney Bixler's representations and signed. Clearly, the foregoing provides substantial evidence that the omissions and deceptive representations of petitioner and her counsel not only prevented respondent from appearing in court, but denied him knowledge of his rights, thereby demonstrating the existence of extrinsic fraud.

## II

Petitioner further contends that the trial court lacked jurisdiction to rescind the marital settlement agreement. We disagree.

Petitioner relies heavily on *Olson* v. *Olson* (1957) 148 Cal.App.2d 479 [306 P.2d 1036] and *King* v. *King* (1963) 215 Cal.App.2d 636 [30 Cal.Rptr. 435], which dealt with motions to vacate judgments pursuant to Code of Civil Procedure section 473. We note, however, that section 473 is very specific in language and narrow in scope, authorizing the court only to *relieve* a party from a judgment taken through mistake, inadvertence, surprise or excusable neglect; thereby allowing the party "to proceed on the merits . . . ." (*Bowman* v. *Bowman* (1947) 29 Cal.2d 808, 813 [178 P.2d 751, 170 A.L.R. 246].) Setting aside the judgment is the only remedy available; hence, *King* and *Olson* correctly held that section 473 did not vest the trial court with jurisdiction to determine underlying factual issues unrelated to the asserted statutory grounds for vacation of the judgment.

In contrast, a proceeding seeking relief from a judgment on the ground of extrinsic fraud is entirely independent of section 473, and the restrictions contained therein are generally inapplicable. (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 165, p. 3738; see, e.g., *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 492 [165 Cal.Rptr. 825, 612

P.2d 915.) Relief may be sought either by motion or by an independent action (*Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213, 220 [142 Cal.Rptr. 563]), and the nature of the relief available is not restricted to setting aside the former judgment; to the contrary, the court has power to provide any appropriate equitable remedy—even when the remedy is sought as a defense against enforcement. (*Caldwell* v. *Taylor* (1933) 218 Cal. 471, 475 [23 P.2d 758, 88 A.L.R. 1194]; *Martin* v. *Martin* (1952) 110 Cal.App.2d 228, 236 [242 P.2d 688]; cf. *Babbitt* v. *Babbitt* (1955) 44 Cal.2d 289, 293 [282 P.2d 1].)

 In addition to vacating the judgments, respondent sought "to have declared void and of no force and effect that certain purported Marital Settlement Agreement dated July 18, 1980, . . . ." Such a declaration of rights is equitable in nature (see *Laurance* v. *Security-First Nat. Bank* (1963) 220 Cal.App.2d 622, 626 [34 Cal.Rptr. 56]) and generally within the scope of that complete relief which a court may administer when it assumes jurisdiction of an equitable controversy. *(Ibid.)*

As noted, *ante,* the nature of the extrinsic fraud which the court below found was two-fold: (1) Respondent was prevented from appearing in court; and (2) respondent was precluded, by deceptive means, from knowing his rights. One vehicle for the perpetration of fraud on respondent in obtaining the judgment was his execution of the settlement agreement while deceived with respect to his rights, for the default stipulation tied the judgment to the settlement agreement. The same facts which establish a judgment obtained by extrinsic fraud in the nature of deception as to respondent's rights thus establish a settlement agreement obtained by fraud in the inducement. (*Jordan* v. *Guerra* (1943) 23 Cal.2d 469, 475 [144 P.2d 349].) The two events are inextricably intertwined; fraud in the inducement under these particular facts is simply one specie of that extrinsic fraud which resulted in the judgment. Accordingly, the manner in which the marital settlement agreement was obtained related directly to the matter before the trial court; it was not an underlying factual issue unrelated to the attack on the judgments. To afford respondent the remedy of setting aside the judgments but, on the same facts, to deny him the remedy of a declaration that the settlement agreement was void defies reason.

An agreement secured by fraud in the inducement is void *ab initio* (*ibid.*). While rescission of a void document is a redundancy, the court's order rescinding and annulling the settlement agreement and imposing an equitable lien on the marital property effectively declared the agreement to be void, thereby providing respondent with the equitable remedy he sought. Inasmuch as we deem that remedy an appropriate exercise of the court's power in the circumstances, we perceive no error.

## III

There is no merit to petitioner's assertion that the trial court's vacation of that portion of the final judgment dissolving the parties' marriage was an abuse of discretion. We acknowledge that the concept of divisible divorce is the established law of this state. (*Lopez* v. *Lopez* (1965) 63 Cal.2d 735, 737 [48 Cal.Rptr. 136, 408 P.2d 744].) Hence, in the presence of extrinsic fraud, the court may vacate property and support provisions of a judgment without disturbing that portion terminating the marriage. (*Ibid.*; *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192, 198 [114 Cal.Rptr. 46].) As a result, absent some evidence of extrinsic fraud in that portion of the judgment dissolving the marriage, it is error to set aside that part of the judgment. However, in the instant matter, the entire proceeding is fatally flawed by the deception practiced upon the respondent; respondent's stipulation that the matter proceed by default was secured by the same means as the iniquitous marital settlement agreement. Accordingly, we perceive no abuse of discretion in the vacation of the entire judgment.

The order is affirmed.

Lillie, J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied November 19, 1982, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1983.