69 Cal.App.2d 749 (1945)
Estate of LAURA LYON WHITE, Deceased. RUTH B. WHITE, as Executrix, etc., Appellant,
v.
AMERICAN TRUST COMPANY (a Corporation) as Trustee, etc., Respondent.
Civ. No. 12810. 
California Court of Appeals. First Dist., Div. One. 
June 27, 1945.
 Sterling Carr and A. Dal Thomson for Appellant. *751
 Brobeck, Phleger & Harrison for Respondent.
 WARD, J.
 This is an appeal from a decree and order denying the cross-petition of Ruth B. White, as executrix of the will of Ralston L. White, deceased, overruling her objections to the tenth report and account of American Trust Company, trustee, formerly the Savings Union Bank and Trust Company, and directing the trustee to expend one-third of the trust property of the estate of Laura Lyon White, deceased, in the erection in San Francisco, California, of a public memorial, to her husband, of a monumental character, the design to be selected by the trustee and to be typical of banking development in the State of California.
 Laura Lyon White, the wife of Lovell White and the mother of Ralston L. White, died testate. Her will was admitted to probate in the early part of 1916. A decree of partial distribution was made by the court in 1916, and a decree of final distribution in 1917. By the terms of her will the residue of her estate was bequeathed to the Savings Union Bank and Trust Company, the predecessor of the American Trust Company, and Ralston Lovell White, in trust, one-half of the net income thereof to be paid Ralston White during the period of the trust. In the event he had no issue the whole of the net income was to be paid to him. The whole of the income was so paid him inasmuch as he had no children. Other children of the Lovell Whites had died in infancy. Upon the death of Ralston Lovell White, which occurred on September 26, 1943, the trust was to terminate and the property vest in his "lawful" issue. In the event he died without leaving issue the will provided for the following disposition of the property: one-third to Edith White, niece of the deceased husband of testatrix; one-third in trust for the benefit of the sister of the testatrix, Margaret L. Whitcomb, and the nephew of testatrix, Bonner Whiteomb, with a vested remainder in the trust property, insofar as Margaret L. Whitcomb's interest was concerned, to Bonner Whitcomb or his heirs, and lastly: "One-third (1/3) thereof to the Savings Union Bank and Trust Company, to be expended by it for the erection of a public memorial of a monumental character, to my deceased husband, Lovell White, the design of said memorial to be selected by the said Savings Union Bank and Trust Company in its discretion, provided that it shall be erected in the City and County of San Francisco, and it is desired that preferably it *752 represent something typical of the banking development of the State of California." Ralston White died without issue so that the alternative provisions of the trust came into effect.
 Ruth B. White, cross-petitioner and appellant, is the wife of Ralston White and his sole heir. She attacks the validity of that part of the trust appropriating funds for the erection of a monument. The reason for her contest appears in certain letters written by Ralston White. In 1935 he wrote her from Merano, Italy, as follows: "Dearest Ruth: It is my express wish that after I die, you shall, as soon as may be, commence suit to break, in your favor, the Laura Lyon White Trust, at American Trust Co. The terms of this Trust are, that if I shall die without issue, the capital sum of the Trust shall go to Margaret L. and Bonner Whitcomb, Edith White, and to a Memorial for my late Father, Lovell White."
 "My mother established this Trust before her death in 1916, at a time when we, you and I, were possessed of a large and independent fortune of our own. My mother wished to provide for relatives that were not so fortunately situated financially, and to leave a fitting tribute to her husband's memory."
 "But now the situation is entirely changed. We have lost our own fortune, and are now engaged in a struggle to pay off a debt of $47,000 incurred during the crash of 1929. Margaret and Bonner Whitcomb are both dead."
 "I would wish to see Edith White get her share of the Estate, as provided. But the other two-thirds, (2/3's) should go to you, by every consideration of justice, equity, natural right, and the love that both my father and mother bore to you. The most fitting Memorial that could be established to my father's memory, and the one that he would most wish, would be to have ample provision made for his son's wife, whom in 1909 he welcomed to the family with the affection of a father for a daughter. And my mother, who loved you dearly, would wish, were she living to-day, to see you established as financially independent as her legacy could make you, and as is fitting for the nearest remaining member of her family."
 "Therefore, my dearly beloved and most loyal and devoted wife, I counsel you, that upon my death, you shall at once engage the services of an excellent lawyer, one familiar with the practice regarding wills and testaments, and file a suit contesting the distribution of the Trust as at present provided, and claim for yourself at least a 2/3 share thereof. I feel sure that no court in the land will, under the changed circumstances, deny your just and equitable claims to a fair share *753 of your natural inheritance. Your loving husband Ralston L. White." The following year Ralston White wrote from Munich as follows: "To American Trust Co. San Francisco, and to the Honorable, the Court having jurisdiction in the execution of the last Will and Testament of my mother, the late Laura Lyon White:-- ... May I invoke your attention to the consideration that no more fitting Memorial could, under the circumstances, be offered to my father's memory than a Trust Fund in the name of and for the benefit of his daughter-in-law, Ruth B. White. ..." Less than six months before his death a second letter of similar import was written to the trustees and the court.
 Ralston White made plain his desire that the memorial fund should be diverted into a maintenance fund for his wife. The particular provision of the will directing the memorial in question was not to become effective until the death of Ralston White, and then only in the event he left no lawful issue. His parents, brother and sisters predeceased him and he left no children. In this connection it is argued that Ruth B. White, his widow and sole heir at law, is also the "issue" of Ralston L. White. This contention is based upon Civil Code, section 1334, in force at the time of the decree of distribution in his mother's estate. The section then read: "A testamentary disposition to 'heirs,' 'relations,' 'nearest relations,' 'representatives,' 'legal representatives,' or 'personal representatives,' or 'family,' 'issue,' 'descendants,' 'nearest' or 'next of kin' of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the title on succession, in this code." In 1931 section 1334 was reenacted as Probate Code, section 108, and the reference to "issue" and "descendants" omitted. It is interesting to note that in the July, 1931, number of the State Bar Journal the draftsman of the Probate Code, referring to the omission of the two words, stated: "It is not conceivable that by either of these words a person could mean ancestors or collateral relatives, altho they might be his heirs."
 [1] The word "issue" as used in the will is not without words of qualification. The word is definitely used in the sense of descendants. An examination of the will shows that certain property should go to the only son of the testatrix during his natural lifetime, with the remainder over to the oldest *754 surviving son (a grandson), if existent, otherwise to his issue or, if none, to his heirs at law. The same idea is carried out in a provision relative to the property held in trust for the benefit of Ralston L. White and his "issue." One-half was to be accumulated and distributed to the oldest child of Ralston L. White, and in the event of his death during minority, to the other children. It was provided that upon the death of Ralston L. White the trust should cease and the property should vest in his "lawful issue." If there were no issue a portion of the property was to vest in the relatives therein named. These provisions show an intent to differentiate between "lawful issue" and "heirs at law." The use of the words "lawful issue" indicates that upon the happening of a contingency the property should go to the legitimate lineal descendants. Under the facts of this case the use of the word "lawful" is unimportant.""
 [2] The word "issue" has been given a limited or a contrary meaning, depending upon the evident intent of the word as used. Even in an enlarged sense, so far as we have been able to ascertain, it has never covered a surviving spouse. In this state in Estate of Cavarly, 119 Cal. 406, 410 [51 P. 629], the court, citing Jarman on Wills, 109, said: "It is also true that the word 'issue' ordinarily means descendants to any degree." (See, also, Estate of Blake, 157 Cal. 448 [108 P. 287].) It is said in volume 3, Page on Wills, lifetime edition, section 1027: "Issue is a word whose primary meaning in the absence of anything to show a contrary intent, is that of legitimate lineal descendants indefinitely." This appears to be the rule generally (33 C.J. 5, pp. 818-819), and is the rule in California when used in the sense that offspring or children may share the estate of a parent. Under old Civil Code, sections 1383 and 1386, or under the Probate Code sections based upon the old section in reference to acquisition of property of one who dies without disposing of it by will, a clear distinction is made between the rights of a surviving spouse and issue. (Prob. Code, 220-231.) [3] If, under the provisions of section 1386, subdivision 4, "issue" means, as appellant contends, that the Ralston L. White trust property should go to his surviving spouse Ruth B. White, then the will would be contradictory and inconsistent with the expressed intent of the testatrix that "If said Ralston Lovell White shall die leaving no issue nor the issue of any deceased child, then the said trust property shall go to and vest as follows: One-third (1/3) thereof *755 to Edith White, niece of Lovell White, the deceased husband of decedent, or her heirs at law; one-third (1/3) thereof to Savings Union Bank and Trust Company, in trust, nevertheless, to and for the following uses and purposes: ..." Such construction would violate the rule that the interpretation of the terms of a will must be in accordance with the intent of the testatrix. (Prob. Code, 163 and 101; Estate of Blake, supra; Estate of Northcutt, 16 Cal.2d 683 [107 P.2d 607]; Estate of Lawrence, 17 Cal.2d 1 [108 P.2d 893]; Estate of Smith, 58 Cal.App.2d 352 [136 P.2d 366].)
 Appellant argues that the trial court should have provided for Ruth B. White as "issue" in succession to the property but, if she is not issue, there is intestacy with respect to the property of decedent Laura Lyon White directed to be used for the purpose of a memorial because that trust is void. In finding against appellant on this point the trial court based its decision upon the fact that the decrees of partial and final distribution were conclusive on the validity of the trust. The decrees followed the language of the will.
 [4] When an estate of a deceased is distributed to trustees appointed under a will, the decree is an adjudication of the validity of the trust. In Cook v. Cook, 17 Cal.2d 639, 652 [111 P.2d 322], the court said: "Whatever may be the merit of plaintiff's contentions, the decree of distribution in the probate proceeding in decedent's estate was conclusive as to the interpretation of the will, and the rights of legatees thereunder, and the property included or covered by the will, the existence, validity of and rights under any testamentary trust, and the incidental matters which necessarily are involved in a determination on those subjects whether right or wrong. It cannot be collaterally attacked except for extrinsic fraud or certain jurisdictional defects." No question of fraud is involved in this case. (See, also, Vincent v. Security-First Nat. Bk., 67 Cal.App.2d 602 [155 P.2d 63]; Goldtree v. Allison, 119 Cal. 344 [51 P. 561].) In Keating v. Smith, 154 Cal. 186, 191 [97 P. 300], the court said: "The validity of the trust is, however, no longer open to question. The decree of the superior court distributing the residue of the estate to trustees upon certain trusts is a conclusive adjudication of the validity of the disposition made by the testator." (See, also, In re Trescony, 119 Cal. 568 [51 P. 951].)
 [5] Prior to the additions found in Probate Code, section 1120 (1931), the Supreme Court, construing former section *756 1699 of the Code of Civil Procedure in McAdoo v. Sayre (1904), 145 Cal. 344, 350 [78 P. 874] said: "We conclude, therefore, that in a proceeding of this character the court has the power, and it is its duty whenever the power is invoked, to ascertain who is entitled to the trust estate already delivered by the trustee, and also that which yet remains to be delivered, and make such orders as may be necessary to enable the trustee to make final settlement with the beneficiary in safety and secure a final settlement of his account which will entitle him to a discharge." This rule still continues. In Society of Cal. Pioneers v. McElroy, 63 Cal.App.2d 332, 340, 341 [146 P.2d 962], the court said: "After a final decree of distribution a probate court or a court of general jurisdiction retains the power to compel the distribution of trust property in accordance with the decree. (Estate of Evans, 62 Cal.App.2d 249 [144 P.2d 625].) In the present appeal we are prohibited from going back to the terms of the will. Right or wrong the decree controls unless it is void on its face." "The decree is the measure of the rights of the parties, unless it should appear, which the record does not disclose, that fraud concealed a fact which caused the court in the decree of distribution to eliminate the possible reversionary interest as set forth in the will." [6] Probate Code, section 1120, as amended, does not impair the power and duty to render a decree of distribution which is final.
 Appellant contends that although Ralston L. White could not have attacked the trust during his lifetime, it may be attacked by his widow on the theory that Probate Code, section 1120, which reenacted Code of Civil Procedure 1699 with some modifications, creates a means of determining to whom trust property shall pass in the event that issue has not previously been determined.
 [7] Ralston White could have attacked the provision in the will relative to the "memorial." Instead of doing so, he accepted, as one of the trustees named in the will of Laura Lyon White, the responsibility of the trust and filed reports and accounts. A decree of distribution is conclusive upon one who was in a position to attack the application for distribution. (Crew v. Pratt, 119 Cal. 139 [51 P. 38].)
 Appellant is unable to conceive of any interest Ralston L. White could have had in assailing the provision of the trust here considered during his life. He enjoyed the income from the entire residue for life and appellant states that the trust *757 provision attacked "was to come into being only upon his death." It is true that if successful in an attack upon the provisions of the trust Ralston White could not have enjoyed the property during his lifetime. He would, however, have become the owner of the remainder interest with power of testamentary disposition and would thus have been in a position to have provided for his wife.
 The Probate Code provides that upon final settlement of an account, due notice of the application therefor having been given, the court "must" distribute the residue of the estate, and that "any person interested" may resist the application. (Prob. Code, 1020.) The decree of distribution determines whether trust property designated in the will shall pass. The court retains jurisdiction to determine "to whom the property shall pass" for certain "purposes hereinafter set forth." (Prob. Code, 1120.) The purposes are set forth in the next nine sections. Probate Code, section 1121, gives to any beneficiary the right to apply for a citation directed to a trustee to file an account. (Estate of Rey, 31 Cal.App.2d 648 [88 P. 2d 718]; Willson v. Security-First Nat. Bk., 21 Cal.2d 705 [134 P.2d 800]; Estate of Evans, 62 Cal.App.2d 249 [144 P.2d 625].) Section 1122 empowers the court in its discretion to determine compensation. (Estate of McLellan, 8 Cal.2d 49 [63 P.2d 1120].) Under section 1123 a decree, when it becomes final, is conclusive upon all persons (Security-First Nat. Bk. v. Superior Court, 1 Cal.2d 749 [37 P.2d 69]), and the remedy of one dissatisfied is by appeal (McLellan v. McLellan, 17 Cal.2d 552 [110 P.2d 1034]; Carr v. Bank of America etc. Assn., 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282]; Estate of Evans, supra). Section 1124 provides for procedure upon a trustee's refusal to act; section 1125, for an appointment to fill a vacancy; section 1125.1, for resignation of a trustee after distribution; sections 1126 and 1127, for the appointment of a new trustee upon petition of anyone interested in the estate; section 1127, for the filing of a bond, and sections 1128 and 1129 for the transfer of trust proceedings to another county.
 The first sentence of Probate Code section 1120 provides: "When a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of determining to whom the property shall pass and be delivered upon final or partial termination of the trust, to the extent that such determination is not concluded by the decree *758 of distribution, of settling the accounts and passing upon the acts of the trustee and for the other purposes hereinafter set forth." In Thomas v. Superior Court, 17 Cal.App.2d 40 [61 P.2d 496], it was held that the court had jurisdiction, under section 1120, to determine the interest and conflicting claims of various assignees of the beneficial interests under a trust created by a decree of final distribution.
 In Estate of Smead, 12 Cal.2d 20, 24 [82 P.2d 182], quoting from Estate of Smith, 4 Cal.App.2d 548 [41 P.2d 565], the court said: "'We believe the language employed in the present section (1120) of the Probate Code was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust.'" In Estate of Marre, 18 Cal.2d 184 [114 P.2d 586] it was contended that section 1120 conferred jurisdiction only to the extent of hearing petitions "brought by the trustee." Citing the Estates of Smead and Smith, the court determined that the superior court had the right to direct the trustees under a testamentary trust to make payment to a beneficiary covering the period between the death of the decedent and the entry of the decree of final distribution. All of these cases in effect hold that questions relating to the operation of a trust are entirely different from the contention made herein that the validity of the trust may be attacked after the decree of distribution has become final.
 [8] Appellant argues that where there is a contingent remainder after termination of a life estate in trust, a different rule applies. California has held to the contrary. In the distribution of a decedent's estate the court, acting in its probate capacity, may pass upon the equitable interest in the property. (Estate of Scrimger, 188 Cal. 158 [206 P. 65].)
 [9] A life beneficiary who has obtained the interest of a remainderman may not terminate a trust against the interest of the unborn, but he may request the court to define and decree the validity of a charitable bequest that may affect the remainderman's disposition of property. "However, appellant's interest as the sole heir at law of his father if an intestacy exists under the terms of the will, or may arise by the lapse of any bequest, gives him the right to urge that any uncertainty in the will in this regard should be construed by the decree of distribution. When there is any question as to *759 the effect of a will, the probate court should construe it and define the interest of each devisee. (Estate of Scrimger, 188 Cal. 158, 165 [206 P. 65]; Goldtree v. Allison, 119 Cal. 344 [51 P. 561]; 11B Cal.Jur., 773, 798.) While appellant can have no interest in possession as to property concerning which there is an intestacy on termination of the trust, since it is to continue until his death, the effect of such an intestacy is to give him an interest of which he may dispose by will, or to which his heirs may succeed. (Estate of Blake, 157 Cal. 448, 454, 469 [108 P. 287]; Estate of Hamon, 136 Cal.App. 517 [29 P.2d 326].)" (Estate of Easterday, 45 Cal.App.2d 598, 609 [114 P.2d 669].)
 In Estate of Hinckley, 58 Cal. 457 the court said: "The decree must be limited to defining the rights of the respective parties in the trust estate. As was said by the learned Judge of the Probate Court: 'It is, under our system, the necessary province of a Probate Court to inquire and determine whether a valid trust has been created. The mode of administering, the power to regulate and direct its subsequent administration, is quite separate and distinct from a question of whether a legal trust has been expressed. ... Section 1665, Code Civ. Proc., provides that "the Court must proceed to distribute the residue of the estate among the persons who by law are entitled thereto."' With this view of the learned Judge, we are in full accord. We may add that it is within the province of the Probate Court to define the rights of all who have legally or equitably any interest in the property of the estate, derived from the will, whether they are entitled to any present enjoyment, or their interests are contingent." (Second italics added.) (See, also, Goldtree v. Allison, 119 Cal. 344 [51 P. 561]; Siddall v. Harrison, 73 Cal. 560 [15 P. 130]; Luscomb v. Fintzelberg, 162 Cal. 433 [123 P. 247]; Jewell v. Pierce, 120 Cal. 79 [52 P. 132]; Estate of Easterday, supra; Estate of Blake, supra.)
 In view of the conclusion that the terms of the trust cannot now be attacked, it is not necessary to consider appellant's argument that the trust is void in that no charitable trust is created and therefore is violative of the rule against perpetuities. This point was not considered by the trial judge and therefore is not a part of the record on appeal.
 The suggestion that it is impossible to design or erect a public memorial of monumental character to Lovell White, typical of California banking development cannot now be *760 passed upon. That problem is in the hands of the trustee subject to appropriate future judicial action in the event the trustee should attempt to erect a memorial not in accordance with the provisions of the trust.
 The order denying the cross-petition of the executrix and overruling objections to the account of the trustee is affirmed.
 Peters, P. J., and Bray, J. pro tem., concurred.