[Civ. No. 8555. Third Dist. Apr. 13, 1955.]

Estate of BOOTH NASH, Deceased. GEORGE H. NASH, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Respondents.

234

George C. Perkins, Weinmann, Rode, Burnhill & Moffitt, L. R. Weinmann and John N. James for Appellant.

C. Ray Robinson, W. E. Craven and Robert T. McCartney for Respondents.

SCHOTTKY, J. — Booth Nash died in Merced County on January 14, 1950. He left a will dated July 17, 1930, which was admitted to probate. The relevant portions of the will are the fifth and eighth articles, which provide as follows:

"FIFTH: All of the rest, residue and remainder of my estate, whether the same be real, personal or mixed, of whatever kind or character and wheresoever the same may be situated, of which I may die seized or possessed, or in which I may have any interest or right of testamentary disposition or power of appointment at the time of my death, including

all our community property, my wife's share thereof as well as my own, I hereby give, devise and bequeath to BANK OF ITALY NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, to be held in trust, nevertheless, subject to the following uses, terms, conditions and limitations:

"(a) During the period of this Trust my said Trustee shall pay to my said wife, DOROTHEA NASH, all of the net income arising herefrom, together with such portions of the principal hereof, if any, as shall be required, in its absolute discretion, for the proper care, maintenance and support of my said wife.

"(b) This Trust shall cease and terminate upon the death of my said wife DOROTHEA NASH; whereupon my said Trustee shall pay, deliver and convey all of the trust estate then remaining in its hands, with the exceptions of those portions provided for in Articles SIXTH and SEVENTH hereof, to my heirs at law in accordance with the laws of succession of the State of California then in force."

"EIGHTH: I am confident that my said wife, DOROTHEA NASH, will be agreeable to the distribution of the rest, residue and remainder of my said estate in trust as set out by the provisions of the foregoing Paragraph FIFTH hereof, particularly since she will thereby avoid the hazards and responsibilities attendant upon the management and investment of an estate, but should my said wife elect to take outright the one-half (½) share of our community property to which she will become entitled upon my death, it is my intention that she shall receive the same, in addition to rather than in lieu of the provisions of the said foregoing Paragraph FIFTH hereof."

The Bank of America National Trust and Savings Association, as successor to the Bank of Italy National Trust and Savings Association, was the executor and petitioned for the probate of the will. Prior to distribution, the widow, Dorothea Nash, executed an election to take under the terms of the decedent's will and waived her right to have any portion of the community property, as such, distributed to her.

On September 11, 1951, the superior court sitting in probate made its order and decree of settlement of account and of final distribution wherein it found that the eighth article of the will provided an election to be made by the widow, Dorothea Nash, and, after setting forth the eighth article, further found "that the widow has made her election and

that she has elected to have the entire estate of the said deceased distributed under the terms of the Will and administered under the trust provisions thereof, without regard to the fact that one-half of the community property might otherwise have been set aside to her, and in pursuance of the said election the Court finds that the decree of distribution affects the entire property and estate of the decedent regardless of the community character of any portion thereof.'' Accordingly, the court distributed to the widow, Dorothea Nash, the personal effects of the decedent and distributed the residue of the estate to the Bank of America National Trust and Savings Association, in trust, for the period of the lifetime of Dorothea Nash, and further provided that the remainder, upon the termination of the trust specified in the fifth paragraph of the decedent's will, shall be, ''and the same is hereby, distributed in accordance with Subdivision (b) of Paragraph Fifth of decedent's Will, to wit, to the heirs at law of Booth Nash, sometimes known as Edwin Booth Nash, deceased, in accordance with the laws of succession of the State of California in force at the date of the death of Dorothea Nash.''

Dorothea Nash died intestate on October 18, 1952. On November 20, 1952, the testamentary trustee filed its petition in this proceeding. On January 2, 1953, Beryl L. McIntosh, a sister of Dorothea Nash, filed her Statement of Claim of Interest in Estate, setting forth that Dorothea Nash was survived by a brother, William S. Firmstone, four sisters, Beryl L. McIntosh, Blanche M. Harris, Hattie B. Firmstone and Della G. Herring, and a niece and nephew, Dorothy C. Simpson and John D. Savercool, the children of a deceased sister of Dorothea Nash. In her statement Beryl McIntosh claimed that one-half of the community property of Booth and Dorothea Nash was the property of and should be distributed to the estate of Dorothea Nash, deceased, and to the heirs of said decedent.

George H. Nash, appellant herein, filed an answer to the statement of claim of Beryl McIntosh, asserting that he was the sole surviving heir at law of Booth Nash and requesting that the entire remainder of the trust property be set aside to him.

After hearing testimony the court found that the widow, Dorothea Nash, was not required to make any election, that she did not make any election and had never been advised as to her legal rights. The court entered its decree deter-

mining the distribution of the estate and ordered that one-half of the assets of the estate of Booth Nash be distributed to George W. Nash, the sole and surviving blood relative of Booth Nash, and that the remaining one-half of the estate be "distributed to the Estate of Dorothea Nash, deceased, and to the heirs of the said decedent, Dorothea Nash, under and pursuant to the laws of succession of the State of California."

George H. Nash, sole surviving heir of Booth Nash, has appealed from the said decree determining distribution of the estate.

The principal contention of appellant is that "insofar as the decree appealed from purports to redetermine the issues with respect to the widow's election, and the distribution of the estate, which were passed upon and determined by the decree of final distribution, it is erroneous and improper and cannot be sustained."

We think it is clear that in the proceedings leading up to and including the decree of distribution, the probate court in the estate of Booth Nash had jurisdiction over the widow's share of whatever community property was owned by decedent and Mrs. Nash at the time of his death.

Section 202 of the Probate Code, so far as pertinent here, provides:

"Community property passing from the control of the husband, . . . by reason of his death . . . is subject to his debts and to administration and disposal under the provisions of Division III of this Code. . . ."

As stated in *Colden* v. *Costello*, 50 Cal.App.2d 363 [122 P.2d 959] (hearing denied), at page 370:

"The Probate Code provides one comprehensive, exclusive method for administration upon the estates of decedents. The proceeding is *in rem* and the jurisdiction of the Court is complete over the property of the estate and over all persons claiming interests therein under the decedent, as to all matters involved in a complete and effective administration. . . .

The title of a surviving wife to her interest in the community estate rests upon a decree of distribution. Her right as survivor of the community is one thing; the decree of distribution which determines and identifies the estate which comes to her by virtue of her right is quite another, and is indispensable as a muniment of her title. . . ."

In *Estate of Kurt*, 83 Cal.App.2d 681 [189 P.2d 528], the court said at page 684:

"Cases dealing with a surviving wife are not in point. A different situation exists where the husband dies leaving the wife surviving. The community property in that case is subject to administration (Prob. Code, § 202) and both before and since 1923 the wife's share of community property comes to her through the probate court, so that her claim is in privity with the estate and can be litigated therein."

██ It is well settled that with respect to matters within its jurisdiction the decree of distribution is conclusive and is not subject to collateral attack except in equity for extrinsic fraud, or, after it becomes final, to direct attack except in accordance with section 473 of the Code of Civil Procedure.

In *Estate of Loring*, 29 Cal.2d 423 [175 P.2d 524], strongly relied upon by appellant, the probate court, upon a petition for instructions with respect to a testamentary trust, ruled that certain legacies were subject to the limitations specified by Probate Code, section 41, although no such limitation had been placed upon the legacies by the decree of distribution. The Supreme Court reversed the order, holding that the decree of distribution was conclusive as to the trust beneficiaries. The court specifically held that even though new issues were involved the decree of final distribution was conclusive and such new issues could not be determined "by reopening issues that were conclusively passed upon in the distribution proceedings."

██ Said the Supreme Court in the Loring case:

"It is settled, and the Lorings concede, that a decree of distribution that has become final is a conclusive determination of the terms and validity of a testamentary trust and of the rights of all parties thereunder." (P. 427, citing numerous cases.)

". . . Moreover, the question is not whether it was proper for the probate court to pass upon the validity of all the provisions of the trust, but whether, assuming that it did, its determination is conclusive. Since the court had jurisdiction to pass upon the validity of at least the residuary provisions of the trust, it clearly had jurisdiction to pass upon the validity of the other provisions thereof. Although the Lorings contend that it did not pass upon the validity of the other provisions the wording of the decree compels the conclusion that it did. It may well be that in doing so it failed to consider the provisions of the Probate Code restricting charitable bequests to one-third of the estate and erroneously

held all the provisions of the trust to be valid. It is settled, however, that, once final, an erroneous decree of distribution, like any other erroneous judgment, is as conclusive as a decree that contains no error.'' (P. 432, citing cases.)

 "The Lorings contend that the issues in the present case arose after the decree and because of a change in circumstances unforeseen at the time it was rendered; that these issues are cognizable in equity only; and that the probate court has no equity jurisdiction, save the limited jurisdiction that it can exercise after distribution under the provisions of section 1120 of the Probate Code. They further contend that it is that limited jurisdiction that the court should now exercise and that to hold that the decree of distribution is res judicata as to the issues in the present case would render section 1120 meaningless, for it would give the court no jurisdiction except to 'rubber-stamp' the decree of distribution. It must be conceded that circumstances now are different from those at the time of the decree and that the probate court has jurisdiction to determine in the light of the changed circumstances how to divide the trust estate among the beneficiaries. It cannot make that determination, however, by reopening issues that were conclusively passed upon in the distribution proceedings. Section 1120 itself contemplates that the exercise of the court's equity jurisdiction is so limited, for its provides that the court may determine to whom the property shall pass upon the termination of the trust, 'to the extent that such determination is not concluded by the decree of distribution.' '' (P. 433.)

In *Estate of White,* 69 Cal.App.2d 749 [160 P.2d 204], the personal representatives of the decedent's son filed objections to a trustee's report, contending, among other things, that a certain trust was void, thereby creating an intestacy. In denying this contention the court said at page 755:

"When an estate of a deceased is distributed to trustees appointed under a will, the decree is an adjudication of the validity of the trust. In *Cook* v. *Cook,* 17 Cal.2d 639, 652 [111 P.2d 322], the court said: 'Whatever may be the merit of plaintiff's contentions, the decree of distribution in the probate proceeding in decedent's estate was conclusive as to the interpretation of the will, and the rights of legatees thereunder, and the property included or covered by the will, the existence, validity of and rights under any testamentary trust, and the incidental matters which necessarily are involved in a determination on those subjects whether right or

wrong. It cannot be collaterally attacked except for extrinsic fraud or certain jurisdictional defects.' ''

(See also *Estate of White,* 69 Cal.App.2d 749 [160 P.2d 204]; *Clavey* v. *Loney,* 80 Cal.App. 20 [251 P. 232]; *Wells Fargo Bank* v. *Superior Court,* 32 Cal.2d 1 [193 P.2d 721]; *Cook* v. *Cook,* 17 Cal.2d 639 [111 P.2d 322]; *Estate of Cecala,* 104 Cal.App.2d 526 [232 P.2d 48]; *Cunha* v. *Hughes,* 122 Cal. 111 [54 P. 535, 68 Am.St.Rep. 27]; *Luscomb* v. *Fintzelberg,* 162 Cal. 433 [123 P. 247]; Cal. Prob. Code, § 1021; 11B Cal.Jur. 794.)

As hereinbefore set forth the court in the decree of distribution found that Dorothea Nash, the widow, ''has made her election and that she has elected to have the entire estate of the said deceased distributed under the terms of the Will and administered under the trust provisions thereof, without regard to the fact that one-half of the community property might otherwise have been set aside to her, and in pursuance of the said election the Court finds that the decree of distribution affects the entire property and estate of the decedent regardless of the community character of any portion thereof.''

The decree of distribution, after distributing the decedent's personal effects to his widow, distributed the remainder of the estate in trust to be held in accordance with paragraph fifth of the will. We are satisfied that under the authorities hereinbefore cited and well established principles of law, when said decree of distribution became final it was conclusive on the rights of the widow and those claiming through or under her. This would be so even though the decree of distribution was erroneous in this respect (which we do not hold) and could have been successfully attacked by the widow on appeal.

Both the trial court and the respondent appear to have been under the erroneous impression that the trial court could redetermine the question of whether or not the widow had elected to take under the provisions of the will. In its memorandum opinion the trial court said:

''The evidence in the above entitled matter having been heretofore submitted to the Court on the 23rd day of April 1953, and after due consideration thereof, it is ordered that the estate of Dorothea Nash is entitled to receive 50 per cent of the value of Booth Nash Estate.

''The Court is of the opinion that Dorothea Nash was not required to make an election under the Will. The Court

finds from the evidence that Dorothea Nash never made an election. The undisputed evidence of Mr. F. E. Braucht, and Mr. A. K. Falch representing the Executor Bank of America, prepared the purported election and neither one of them ever read or explained it to her. There was no consideration for it. The heirs are to be determined by Section 228 Probate Code.

"The Court is of the opinion that the case of *Estate of Boyd* 95 Cal.App.2d 44 [212 P.2d 17] is controlling."

*Estate of Boyd*, 95 Cal.App.2d 44 [212 P.2d 17], which the trial court regarded as controlling, and which is also cited by respondent, is not in point and does not support respondent's position. In that case the husband left the residue of his estate in trust, the income to be paid to the widow during her life and upon her death the trust property to be distributed to the children of the marriage. The will was admitted to probate and the widow petitioned for, and received, a family allowance. Then the widow petitioned for a determination of her interest in the estate, claiming that the assets were all community property and that she was entitled to one-half thereof free of the trust. After a hearing the court sitting in probate held that appellant by petitioning for and accepting a family allowance had elected to abide by the terms of the will and was precluded from claiming any interest in the estate by reason of such election other than her interest as set forth in the will. Upon appeal the court reversed this order, and in so doing used the following language quoted and relied upon by respondent:

"A widow's obligation to make an election arises only where the testator, by the terms of his will, clearly manifests an intention to make a testamentary gift to her stand in lieu of her community interest in the property of the estate. [Citations.]

"In the instant case there is nothing inconsistent between appellant's accepting a family allowance and the provisions in the will for her benefit. The provisions of the will were general in their nature, and decedent, by the terms of his will, did not manifest an intention to require her to make an election between her rights under the statute and those which she might receive under the will. Therefore she was not required to make, and her action did not constitute, an election."

*Estate of Boyd* is clearly distinguishable from the instant case because there was nothing in the will requiring an elec-

tion by the widow, and furthermore, the widow demanded her statutory rights prior to the distribution of the estate. *Estate of Boyd* was not a case where a decree of distribution distributed property to a trustee upon certain trust conditions and after said decree became final the heirs of the wife sought .to change the terms of the decree of distribution.

Respondents have not cited any case, nor have we found any, that is contrary to the holding of *Estate of Loring, supra,* that after property has been distributed to a trustee by a decree of distribution and the decree of distribution has become final, the probate court has no power to make any order except an order that will carry out the terms of the trust as set forth in the decree of distribution.

The court was clearly in error in receiving evidence by which respondent sought to show that Dorothea Nash had not made an election because it was precluded from so doing by the decree of distribution which had become final. Said decree of distribution, signed by the same judge who signed the decree now appealed from, found that she had made an election and that determination was res adjudicata of that issue. Upon hearing the trustee's petition for instructions and respondents' statement of claims the only power that the court possessed was to order the terms of the trust as set forth in the decree of distribution carried out. As stated in *Estate of Loring, supra,* "It cannot make that determination, however, by re-opening issues that were conclusively passed upon in the distribution proceedings."

In view of the foregoing it is unnecessary to discuss the other contentions discussed in the briefs.

The decree appealed from, entitled "Decree Determining Distribution of Estate" is reversed, with directions to the trial court to order distribution in accordance with provisions of the decree of distribution.

Van Dyke, P. J., and Peek, J., concurred.