[Civ. No. 26709.   Second Dist., Div. Two.   June 27, 1963.]

KATHERINE GOLDBERG, Plaintiff and Appellant, v. LESTER L. GOLDBERG, Individually, as Executor and as Cotrustee, etc., et al., Defendants and Respondents.

Leo Shapiro for Plaintiff and Appellant.

Mitchell, Silberberg & Knupp, Allen Kaufman and John L. Nourse for Defendants and Respondents.

ASHBURN, J.—In this equity suit plaintiff seeks to establish that certain real property constituting the home of herself and her deceased husband, Mort D. Goldberg, was joint tenancy property which passed automatically to her upon his death; that certain other real and personal property (the major portion of the estate) was community property in which she owned a one-half interest regardless of the last will of her husband; also that the final probate decree which distributed all of said properties to three trustees be set aside upon the ground that it had been obtained by extrinsic fraud. The court sustained without leave to amend a general demurrer to each count of her amended complaint.[1]

Plaintiff, the widow, sues the executor of decedent's will, Lester L. Goldberg, her husband's brother, also the trustees of two trusts created thereby, Trust A and Trust B, said trustees being decedent's three brothers, Lester L. Goldberg, Eli J. Goldberg and Frank Goldberg. Joined as additional defendants are James J. Goldberg, the primary bene-

---

[1]The complaint contains six counts, but the last one, which sought removal of the trustees, was voluntarily dismissed.

ficiary of Trust B and minor son of plaintiff and decedent, and other Goldberg relatives who are contingent remaindermen of both trusts,—"brothers and sister, or to their heirs, per stirpes." After making certain specific legacies the will divides the residue equally and creates therefrom Trusts A and B. The terms thereof are set forth in the footnote.[2]

Count 1 alleges in terms sufficient to defeat a general demurrer the claim that plaintiff and decedent had a home in Los Angeles County which they owned as joint tenants; that they sold it and at that time orally agreed that the proceeds would be applied to purchase of a new home which would be owned by them as joint tenants with right of survivorship, although the title be taken in the name of the husband. The deed to the new home was recorded on May 13, 1955; on May 18, 1955, decedent transferred the property to his brother Arthur J. Goldberg by deed which was recorded on February 14, 1956, and "said defendant held said property for plaintiff and decedent as joint tenants"; by deed of February 29, 1956, Arthur J. Goldberg transferred record title to the husband, Mort D. Goldberg, but said deed was not recorded until January 8, 1959, after Mort's death which occurred on November 15, 1958.

These allegations were doubtless sufficient (at least with the addition of certain permissible amendments) to raise the issue that the home property was held in joint tenancy at the time of the husband's death and the decree purporting to vest it in the trustees pursuant to the terms of the will was without authority. This position is sound.

[2] "FIFTH: . . . (b) I direct that the income of Trust A be set aside for the use and benefit of my beloved wife, KATHERINE, should she survive me, without limitation or restriction, for and during the remainder of her life, to be paid quarterly.

"(c) I direct that Trust B shall remain a trust estate, to be administered by my Trustees hereinafter named, until my son, JAMES, arrives at the age of thirty years, namely, December 17, 1979, at which time Trust B shall terminate, and all property in said trust, including all income, increment and earnings, shall be turned over by my Trustees to my son, JAMES, should he be living at said date.

"In the event my son, JAMES, should pass away before December 17, 1979, and leaves no blood heirs of his body surviving, then, I direct that the estate created herein vest in my brothers and sister, or to their heirs, per stirpes.

"SIXTH: I hereby give to my beloved wife, KATHERINE, the power of disposition by will, of all of the property designated as Trust A herein. Should my wife fail to execute a will under the power granted herein, then, upon her decease, and such power having lapsed, it is my desire that the property in Trust A shall merge with Trust B and disposition of said property shall then be subject to the provisions pertaining to Trust B."

■ Although the averment that the spouses "orally agreed at the time of such sale that the proceeds of said sale would be applied to the purchase of their new home" does not further say that this was done, it seems plainly to mean that, and certainly was amendable. It is followed by the phrase, "and that their new home would be owned by plaintiff and decedent as joint tenants with right of survivorship, notwithstanding the fact that record title thereto was taken in the name of decedent." As it stands, without amendment, this count of the complaint does not present merely a claim to specific performance of the agreement (as respondents contend), for the more recent cases flatly hold that the agreement is enough and execution in the sense of performance is not an essential of the showing that the property has been converted by the oral agreement. See *Estate of Sears*, 182 Cal.App.2d 525, 529-530 [6 Cal.Rptr. 148]; *Estate of Raphael*, 91 Cal.App.2d 931, 939 [206 P.2d 391].

■ Moreover, it is a settled principle that the "proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired [citations]." *(Fish* v. *Security-First Nat. Bank*, 31 Cal.2d 378, 387 [189 P.2d 10].)

■ Joint tenancy property belongs to the survivor by virtue of the original joint tenancy title and not through inheritance or any other type of succession after death. ■ The probate court has no jurisdiction over it except to the extent conferred by statute, namely, the procedure for establishing the fact of death under Probate Code sections 1170-1175. Since section 1174 confines the effect of the judgment to "establishing the fact of the death, which judgment shall be prima facie evidence of the fact of the death," the order does not affect the title and if it purports to do so is *pro tanto* void. It was specifically so held in *Le Pleux (Py)* v. *Applegate*, 164 Cal.App.2d 9, 10, 11 [330 P.2d 65]; *United States* v. *Pierotti* (9th Cir. 1946) 154 F.2d 758, 762. The principle is further supported by *King* v. *Pauly*, 159 Cal. 549, 555, 557 [115 P. 210, Ann. Cas. 1912C 1244]; *Hansen* v. *Union Savings Bank*, 148 Cal. 157, 160 [82 P. 768]; *Matter of Tracey*, 136 Cal. 385, 390, 391 [69 P. 20]; *Estate of Basso*, 68 Cal.App.2d 294, 299 [156 P.2d 476]. ■ The demurrer was erroneously sustained without leave to amend with respect to the first count.

■ Count 2 alleges facts sufficient to tender the issue

that all of the property except the home was acquired in California after the spouses established their residence in this state, and was purchased with community funds; that, though inventoried in the estate as decedent's separate property, it was in fact community at the time of death, having an appraised value of $1,381,927.29. Plaintiff claims title to one-half of these assets regardless of the decree of distribution. We cannot uphold this position for it is settled law that the surviving wife is not a stranger to the estate (as is the husband where the wife dies first) but takes in privity with the estate and pursuant to the decree of distribution of the probate court. See *Estate of Algee,* 158 Cal.App.2d 691, 696-698 [323 P.2d 221]; *Colden* v. *Costello,* 50 Cal.App. 2d 363, 369-370 [122 P.2d 959]; *Estate of Kurt,* 83 Cal.App.2d 681, 684 [189 P.2d 528]; *Estate of Phillips,* 123 Cal.App.2d 570, 574 [266 P.2d 954]; *Estate of Nash,* 132 Cal.App.2d 233, 237 [283 P.2d 184]; *Central Bank* v. *Superior Court,* 45 Cal.2d 10, 17 [285 P.2d 906]. ▮ An exception to the foregoing rule exists where the wife for some reason claims the whole of the community property; in such case she is treated as an adverse claimant and the issue is properly entertained by a court of equity in an independent action. *(Sieroty* v. *Silver,* 58 Cal.2d 799, 802, 804, 806 [26 Cal.Rptr. 635, 376 P.2d 563].) ▮ But appellant here claims only half of the community property and the general rule of the *Colden* v. *Costello* line of cases, *supra,* applies.

Count 2, standing alone (without the aid of extrinsic fraud alleged in counts 3, 4 and 5), is not good against a general demurrer in this equity suit and there was no error in sustaining the demurrer with respect thereto. Appellant's counsel conceded this upon oral argument.

▮ Counts 3, 4 and 5 rest upon the claim of extrinsic fraud and vary only in the relief sought by plaintiff. In the main, 4 and 5 incorporate the allegations of 3. ▮ A decree of distribution disposing of community property, like any other judgment, is subject to attack for extrinsic fraud. *(Estate of Nash, supra,* 132 Cal.App.2d 233, 238; *Cook* v. *Cook,* 17 Cal.2d 639, 652 [111 P.2d 322].)

These causes of action allege facts showing that defendant executor and defendant trustees were fiduciaries and persons standing in a confidential relation to appellant. ▮ Volume 1 Restatement Second of Trusts, section 2, page 7: "Although the relation between two persons is not a fiduciary relation, it may, nevertheless, be a confidential relation. A

confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relation may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship or one of friendship or such a relation of confidence as that which arises between physician and patient or priest and penitent. ■ If one person is in a confidential, but not a fiduciary, relation to another, a transaction between them will not be set aside at the instance of one of them unless in fact he placed confidence in the other and the other, by fraud or undue influence or otherwise, abused the confidence placed in him. . . . ■ Although a fiduciary relation exists, an otherwise valid transaction between the parties which is not within the scope of the relation will be set aside if, but only if, there is an abuse of a confidential relation between the parties." See also *Vai* v. *Bank of America*, 56 Cal.2d 329, 337-338 [15 Cal.Rptr. 71, 364 P.2d 247].

■ "It is a trustee's duty always to give first consideration to the best interests of the trust. The confidence reposed in the trustee is the essence of the trust relation, and the Civil Code provides that, in all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary. Ordinarily, trustees are bound to an unselfish exercise of good faith, both in their dealings with beneficiaries and in carrying out the objects for which the trust was created, and it is the duty of all trustees to execute the trust in the manner that will best serve the interest of the beneficiaries. Concealment, threat, or adverse pressure of any kind is unlawful as long as the confidential relation exists. The trustee is, of course, liable to his beneficiary for any actual fraud, as where he sells the trust property at much less than actual value, obtaining the beneficiary's consent by misrepresentations. Any violation of the trustee's duty of good faith and undivided loyalty is considered a fraud against the beneficiaries, and this principle is embodied in the statutes.

■ "Beneficiaries have a right to rely on the good faith of their trustee and, in the absence of direct evidence that they knew he had turned against them, it must be assumed that they did so rely." (49 Cal.Jur.2d § 220, pp. 63-64.)

■ ■ The averments of the instant complaint (which we must accept as true whether skeptical of same or not;

*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 288 [295 P.2d 113]) are as follows: Defendants Lester L. Goldberg, Eli J. Goldberg and Frank Goldberg are brothers-in-law of plaintiff and uncles of defendant James J. Goldberg; Lester and Frank are attorneys "with many years of experience" and "skilled and learned in the law," practicing in Illinois where they reside; prior to his death Mort, the decedent, was an attorney and practiced in association with the two brothers. Plaintiff had complete and unlimited confidence in her three brothers-in-law and relied completely upon them with respect to all matters relating to the probate of the estate of Mort and her rights and interests therein. Shortly after Mort's death these three defendants represented to plaintiff that all the estate of decedent was his separate property and not common property and she had no interest therein; that the will left nothing to her except the income from half of the estate, in Trust A; that this was extremely liberal and generous, as decedent could have left her nothing, as all his estate was his separate property; that said defendants "were familiar with all of the decedent's holdings and interests, and that they would see that she and her son would receive everything that they were entitled to, and in fact, more; that as they were brothers of the decedent, uncles of James J. Goldberg, and brothers-in-law of plaintiff, and as blood was thicker than water (and then evidenced an alleged interest and concern in details of the well-being of their late brother's widow and only child), they would always see to it that she and her son James J. Goldberg were fully protected and that the way of life to which they had become accustomed during the lifetime of said decedent would continue uninterrupted and unchanged"; that although Farmers and Merchants National Bank and Trust Company was named as coexecutor and as one of the trustees of the testamentary trusts, there was no need for it to act, which would mean added expenses, and that they would see that the bank renounced its right to act as coexecutor so that Lester could act as sole executor, thereby eliminating interference or joint control by strangers to the family; and they would see that the bank renounced its right to act as cotrustee and would have Frank appointed in its place; that the three brothers would act as cotrustees without interference or joint control by any outsider, and that the bank would not be as generous as the family would be; that defendants would employ the firm of Bartman & Braun as

their attorneys and that said firm would see that plaintiff's interests were taken care of and would see to it that she was fully protected; that if she left everything up to her brothers-in-law and cooperated with them she and James would have no problems ''and need not concern themselves in any way, and that they would take care of everything for her as they were all one family and their only interest was to see that she, their brother's widow, and her son, their nephew, were fully protected; that during the pendency of the estate they had no jurisdiction but that as soon as the estate was closed they would see that more monies were made available to her''; also, that ''plaintiff had complete trust and confidence in each of her said brothers-in-law, the defendants herein, and believed and relied on the representations, promises, statements and assurances made by them as hereinbefore alleged''; also alleged that said representations were false and known by defendants to be untrue; that in fact the decedent's estate was not his separate property but was either all community or part community and part separate; the bank account (some $34,000) was community and not separate property; the stocks, bonds and securities (in excess of $486,000) were community and not separate property; the residence ($90,000) was not separate property but was joint tenancy or common property; that decedent's interests in partnerships and joint ventures (worth more than a million dollars) were community, not separate property; that defendants had no interest in the well-being of their brother's widow and only child and were concerned only with obtaining control of the property in his estate; that all of the foregoing facts with respect to the status of the property were known to defendants and to their attorneys but were not known to plaintiff. Defendants did not inform plaintiff of the following facts: that decedent's property was presumed to be common; that the home was owned as joint tenancy and was not part of the estate; that plaintiff had ''the right and need to be represented by her own counsel in connection with her interests in said estate, and that she should be so represented.'' That the purpose of the defendants in making the above representations and failing to inform plaintiff of the matters just mentioned ''was to keep plaintiff out of court, and to prevent her from filing an adversary proceeding in the probate court to obtain . . . (b) a determination on the merits as to whether the property in decedent's estate was separate property or community property, or part separate and

part community; (c) an adjudication on the merits as to whether the home of the parties was owned by decedent and plaintiff as joint tenants, and as to whether or not plaintiff became the owner of said property as the surviving joint tenant upon the death of said decedent, and (d) otherwise from taking such steps and proceedings in said probate estate as might be necessary and appropriate to determine plaintiff's rightful share thereof. That in reliance upon the said representations, promises, statements and assurances of defendants, and in ignorance of her legal rights, and not otherwise, plaintiff did not . . . file proceedings to determine that the home of the parties at 701 North Arden Drive was joint tenancy property, title to which vested in plaintiff as her separate property upon decedent's death, and took no steps whatsoever to obtain a determination of her rightful share and interest in said estate.'' Defendants induced and caused plaintiff to sign a consent to appointment of Frank Goldberg as cotrustee and an approval and consent to the second and final account and report of defendant Lester as executor, and his petition for construction of the will and for distribution. When the documents were presented to her for signature by the attorneys for defendants ''plaintiff did not know or understand, and neither said defendants nor said attorneys explained to or informed plaintiff that the said purported consent was in effect an acknowledgement by her that the estate of said decedent was his separate property, and that if an order was made in said probate proceedings declaring said estate to be separate property, that no part thereof would go to plaintiff.'' ''That both of said documents were signed by plaintiff at the insistence and request of defendants, acting through their said attorneys, and in the belief that by so doing she was acting in her best interests, and that her interests in said estate had been and would be fully protected, as promised and represented by said defendants.'' ''That if plaintiff had known or understood the legal effect of said purported consent, or if said matters had been explained to her, she would not have signed the said consent, and would have filed objections to said Final Account and Report, and to the said Petition for Construction of Will, and for distribution, in order to protect and safeguard her community property interest in the estate of said decedent. That by reason of the foregoing facts plaintiff was prevented from appearing in or filing any ad-

versary proceedings in the said probate estate to obtain her just share of said estate, and there was in fact no adversary trial or decision of the issues involving plaintiff's rights therein.''

Said final account and petition for distribution came on for hearing on July 5, 1960; that "in reliance upon the said promises, representations, statements and assurances of defendants, as hereinbefore alleged, and in the belief that her interests had been and would be fully protected by defendants, plaintiff did not question the propriety of either said Final Account and Report, or Petition for Construction of Will and Petition for Distribution, and did not appear at said hearing, either personally or by counsel, and no opposition having been made thereto, the said account was approved and distribution of said estate was ordered''; that all of the property has been distributed to said three defendants as trustees of Trusts A and B, including the home and plaintiff's share of the community property. Hence plaintiff prays that the order approving the final account and report and decreeing distribution of the estate be vacated and the probate proceeding be reopened ''to permit plaintiff to file such objections, petitions and proceedings as may be necessary and proper to determine the character and nature of the property of decedent, and whether the same was community property, or separate property, or part separate and part community; that one-half of the community property be ordered distributed to plaintiff, and the remaining one-half of the community property and such property as may be determined to be decedent's separate property be distributed one-half to Trust 'A' and one-half to Trust 'B' in accordance with the provisions of the will of Mort D. Goldberg, deceased,'' and for further appropriate relief.

Lester, as executor, clearly was a fiduciary *(Stevens* v. *Torregano,* 192 Cal.App.2d 105, 123 [13 Cal.Rptr. 604]), and the three brothers, Lester, Eli and Frank, as testamentary trustees were fiduciaries who became contingent remaindermen of Trust B, and perhaps of Trust A; they acquired an interest in the joint tenancy property and plaintiff's half of the community property—a distinct advantage to themselves. The consents above mentioned were filed in the probate proceedings on June 3, 1960, and July 5, 1960; the hearing upon the accounting and petition for distribution was held on the last mentioned date and

the decree made on July 11, 1960. Mort had died on November 15, 1958, and the assets of the trusts had vested in the trustees immediately (49 Cal.Jur.2d § 155, p. 17). Frank was substituted as a trustee on June 3, 1960, and as such assumed the same fiduciary relationship and obligations toward plaintiff as rested upon the other trustees. All of this was before the hearing of the final account, etc. The imposition of the executor upon plaintiff, and that of the three trustees (as set forth in the above summarized allegations of the complaint), clearly amounted to extrinsic fraud and if proved would afford plaintiff good ground for vacating the decree of distribution and litigating the questions she was deflected from presenting at the hearing of July 5, 1960.

We should also add that the allegations of the complaint show a confidential relationship and violation of its obligations by defendants. ▆▆ "Thus, equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case." (*Jorgensen* v. *Jorgensen*, 32 Cal.2d 13, 18 [193 P.2d 728].) See also *Vai* v. *Bank of America, supra*, 56 Cal.2d 329, 337-338; *Wellman* v. *Security-First Nat. Bank*, 108 Cal.App.2d 254, 263-265 [238 P.2d 679]; *Clark* v. *Clark*, 195 Cal.App.2d 373, 379-380 [15 Cal.Rptr. 863]; *Halloran* v. *Isaacson*, 95 Cal.App.2d 357, 365-366 [213 P.2d 19]; *Duffy* v. *Duffy*, 82 Cal.App.2d 203, 207 [186 P.2d 61]; *Thiriot* v. *Santa Clara etc. School Dist.*, 128 Cal.App.2d 548, 551, footnote 3 [275 P.2d 833].

▆▆ The argument of respondents that the fraud, if any, was intrinsic because plaintiff signed and there was presented to the court a consent to the appointment of Frank Goldberg as trustee, and approval and consent to the final account and report, and an approval and consent to petition for construction of will and for distribution, cannot prevail. They were the products of the fiduciaries' misrepresentations and failure to disclose pertinent facts to the plaintiff and were the instrumentalities through which plaintiff was kept from fully or at all presenting to the court her legitimate claims. The fraud was worked on her, rather than the court, and was truly extrinsic.

Neither does the fact that the complaint contains no allegation of failure to give formal notice of hearing strengthen respondents' position. Having been led to believe that her interests were being fully protected and that appearance in the proceeding or attendance upon the court was unnecessary, the fact of receipt of formal notice of hearing becomes inconsequential; the fraud induced plaintiff to ignore any such notice and hence was extrinsic.

It must be remembered that statements of false conclusions of fact or law made by a fiduciary to a beneficiary are condemned equally with untrue factual statements. *(Terry* v. *Bender,* 143 Cal.App.2d 198, 213 [300 P.2d 119]; *Seeger* v. *Odell,* 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Mathewson* v. *Naylor,* 18 Cal.App.2d 741, 744 [64 P.2d 979]; 23 Cal.Jur.2d, § 18, p. 47.)

*Carr* v. *Bank of America,* 11 Cal.2d 366 374 [79 P.2d 1096, 116 A.L.R. 1282], upon which respondents rely, is not controlling here. It was there sought to hold defendant bank liable as executor and as trustee for failure to dispose of certain stock it had received as part of decedent's estate. It had entered into an agreement with the complaining beneficiary and others to the effect that the stock should be distributed to the bank as trustee and held by it in that capacity. The plaintiff claimed that the agreement fraudulently withdrew from the hearing of the executor's final accounting the issue of whether the executor was surchargeable for negligence in failing to sell the stock. In affirming a judgment for defendant the Supreme Court stated the heart of the case as follows: "Moreover, the agreement itself was presented to the probate court for its approval and for its incorporation into the decree of distribution and this fact compels the conclusion that any fraud in its procurement, now alleged, was necessarily within the issues of its fairness and the advisability of the approval of such agreement by the probate court, and, even if fraud were proven, it would constitute intrinsic, in contra-distinction to extrinsic, fraud. . . . In the instant case, not only was the issue of whether the bank fraudulently retained the shares during administration presented to the probate court upon the executor's account, but also the question of whether it fraudulently secured the agreement upon the petition for final distribution. It follows that the order settling the bank's account as executor and for final distribution was conclusive with regard to its acts as executor.

". . . We have no doubt that such a duty rests upon the trustee, but the order settling the executor's account and for final distribution conclusively negatives the charge of mismanagement, negligence or fraud on the part of the bank as executor. If this be true, no duty devolved upon the trustee to move to obtain control of the trust assets. Likewise the issue of whether the trustee was liable as trustee in not protecting the interests of the minor beneficiaries, in the execution of the agreement of August 30, 1930, must be held to have been conclusively determined in the negative by the order decreeing final distribution inasmuch as that order conclusively determined that the method of distribution therein planned was proper and advisable."

This case was cited in *Gale* v. *Witt*, 31 Cal.2d 362, 366 [188 P.2d 755], for the proposition that ". . . to constitute extrinsic fraud, there must have been some representation or concealment by the defendant which prevented the plaintiff from having his day in court and it has been applied to the acts of executors and trustees who were charged with false representations.

"For example, in a suit against a bank which acted as executor it was held that a judgment rendered in a probate proceeding may not be set aside upon the ground of extrinsic fraud in the absence of proof that the executor acted in such manner as 'to prevent, foreclose or hinder' a full and fair hearing upon the issue then before the court for determination." See also, quotation from *Jorgensen* v. *Jorgensen, supra*, 32 Cal.2d 13, 18.

The burden of plaintiff's complaint is that she was misled by her fiduciaries—the executor and the testamentary trustees—in such manner that she was prevented from presenting her case to the probate court, and indeed was kept ignorant of the fact that she had a case. Its allegations are sufficient to support that theory against a general demurrer.

Respondents' case of *Estate of Nash, supra*, 132 Cal.App. 2d 233, is not opposed to these views. There was no extrinsic fraud or claim of extrinsic fraud in that case. Respondents' brief says, with respect to *Jorgensen* v. *Jorgensen, supra*: "Concealment or misrepresentations as to matters of law, said the Court, do not constitute extrinsic fraud." We find no such statement in the opinion and the contrary is established by the case of *Terry* v. *Bender* and other cases above cited; that is to say, such concealments

or representations when made by a fiduciary do work an extrinsic fraud when they operate to keep a beneficiary away from court or from fully presenting her case.

Assuming as true the facts alleged in the instant complaint, a case of extrinsic fraud is shown and a demurrer should not have been sustained as to the third, fourth or fifth cause of action.

The judgment is reversed with instructions to the lower court to overrule the demurrer as to the first, third, fourth and fifth causes of action, to permit plaintiff to amend any counts of the complaint except the second and to grant leave to defendants to answer within a reasonable time.

Fox, P. J., and Herndon, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 20, 1963.